CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY

*v.*

MARY H. LEWIS.

*Filed at Ottawa January 23, 1884.*

1. APPEAL—*reviewing controverted questions of fact.* An affirmance of the judgment of the circuit court, in an action to recover damages on account of negligence, by the Appellate Court, implies a finding of the facts the same as they were found by the trial court, and no further inquiry can be had in respect to them, the statute being peremptory that in such cases no assignment of error shall be allowed in this court which calls in question the determination of the inferior or Appellate Court upon controverted questions of fact.

2. PRACTICE—*directing the jury as to their finding.* Asking an instruction to withdraw a case from the jury, or directing them to find for the defendant, in its effect is treated the same as a demurrer to the evidence, which admits everything the evidence tends to prove. Where there is evidence tending to show a right of recovery in the plaintiff, it is error to instruct the jury to find for the defendant, although the court may believe the weight of the evidence is with the defendant.

3. Where the facts of the case are undisputed or admitted, it becomes a question of law for the court to decide whether such admitted facts constitute a legal cause of action; but where the facts are disputed, and the evidence in respect to them is conflicting, such is not the case, and it is not for the court to find the facts, and from them say whether the law is for one party or the other.

4. CONTRACT—RELEASE OF DAMAGES—*whether binding, as being unfairly obtained.* A release of all claim for damages growing out of a personal injury caused by negligence on the part of defendant, if fairly obtained by the agents of defendant, (a railway company,) and understandingly executed by the plaintiff, is an effectual bar to an action to recover for such injury.

5. If a party, however, after receiving a serious personal injury as a passenger on a railway train, through negligence of the company, is induced to sign a release of all damages by the agents of the company, through their representations or acts, which induce in his mind the belief he is only signing a receipt for money paid him at the time for loss of time and expenses incident to the delay resulting from the accident, and not as a discharge of the company for the injuries sustained, or if such release is procured by fraud and circumvention, it will be void as to the party so induced to execute the same. Fraud vitiates everything it touches, and a party will not be allowed to avail of an undue advantage obtained over another by fraudulent practices.

6. Or, if a person, while under the influence of opiates to such an extent as to be incapacitated to contract, is induced to execute a release of damages for a personal injury, it will not be obligatory upon him, and will be no defence to an action brought by him.

7. SAME—*as to negligence of party in signing paper without reading.* Where a person was severely injured as a passenger on cars of a railway company, and in a few hours after being taken to a hotel, after the injury, was induced by the agents of the company to sign a release of his right of action, under the belief he was signing only a receipt for money, which belief was caused by their fraudulent practices and representations, and it appeared that at the time he was suffering great physical pain and laboring under the effect of opiates, it was *held*, that under the circumstances he was not chargeable with such negligence in executing the release without having first read the same, as to preclude him from asserting the truth as to the manner in which his signature was procured.

8. SAME—*refunding money received on a contract which is afterwards repudiated.* If a release of a cause of action is obtained from a person by fraud and circumvention, at a time when he is incapable of making a contract rationally, and money is paid to him at the time of its execution, he may repudiate the release, and bring his action without first paying or tendering back the money received by him.

9. SAME—*if a contract is void, no rescission necessary before asserting rights.* An instrument absolutely void need not be rescinded in order to remove it out of the way to the assertion of a right. A contract void on account of fraud, or for any other reason, is in law as though it had never been executed.

10. INSTRUCTION—*must be founded on evidence.* The court should not give an instruction where there is no evidence tending to support the hypothetical case assumed by it, for the reason that it directs the attention of the jury to elements of liability that do not exist under the evidence, and it is manifest error to do so.

11. SAME—*on what degree of evidence it may be given.* It is not necessary the court should be satisfied that the hypothetical case stated in an instruction is fully sustained by the testimony, before it would be required to submit it to the jury. Even positive testimony is not always required. It is sufficient if the assumed fact may be reasonably inferred from the circumstances proved.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. NINIAN M. LAWS, Judge, presiding.

Mr. THOMAS F. WITHROW, and Mr. H. W. WELLS, for the appellant:

The court was asked to instruct the jury that there was no sufficient evidence of fraud in obtaining the release, and to find for the defendant. Before a cause is submitted to a jury the court must determine, as a matter of law, whether or not there is evidence from which the jury can reasonably infer that the plaintiff has established a *prima facie* case. *Improvement Co.* v. *Munson,* 14 Wall. 448; *Merchants' Bank* v. *State Bank,* 10 id. 637; *Pleasants* v. *Fant,* 22 id. 122; *Parks* v. *Ross,* 11 How. 373; *Fawling* v. *United States,* 4 Cranch, 221; *Schuchardt* v. *Allens,* 1 Wall. 369; *Oscanyan* v. *Arms*

*Co.* 103 U. S. 206; *Phillips* v. *Dickerson*, 85 Ill. 14; *Pennsylvania Co.* v. *Conlan*, 101 id. 105.

An instruction which tells the jury if a certain fact exists, virtually tells them that there is evidence from which they can find that fact, and if there is no such evidence, the instruction is erroneous. *Illinois and St. Louis Ry. Co.* v. *Miller*, 71 Ill. 464.

Any degree of influence of liquors or opiates does not avoid a contract. *Bates* v. *Ball*, 72 Ill. 111; 1 Story's Eq. Jur. secs. 231, 233; *Mansfield* v. *Watson*, 31 Iowa, 212.

It is error to submit a question of fraud to a jury upon slight parol evidence, to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable, otherwise it should be withdrawn from the jury. *Stine* v. *Sherk*, 4 W. & S. 195; *Irwin* v. *Shoemaker*, 8 id. 75; *Dean* v. *Fuller*, 4 Wright, 474.

As to the fraudulent representations and practices to avoid a written contract, see *Bell* v. *Ryerson & Barlow*, 11 Iowa, 237; *McCormack* v. *Mulbury*, 43 id. 561; *Illinois Central R. R. Co.* v. *Welch*, 52 Ill. 183; *Shultz* v. *Chicago and Northwestern R. R. Co.* 44 Wis. 638; *Chicago, Rock Island and Pacific Ry. Co.* v. *Doyle*, 18 Kan. 58; *Rogers* v. *Place*, 29 Ind. 280; *May* v. *Johnson*, 3 Port. 449; *Dutton* v. *Clupper*, 78 Ind. 137; *Nebeker* v. *Cutsinger*, 72 id. 139; *American Ins. Co.* v. *McWherter*, 53 id. 276; *Clodfelter* v. *Hulett*, 48 id. 437.

Messrs. Barrere & Grant, for the appellee:

The jury having found the fact that the appellee was incapable of making a contract, and overreached, this court is bound by that finding. *Chicago, Rock Island and Pacific Ry. Co.* v. *Doyle*, 18 Kan. 58.

The release having been obtained fraudulently, under the belief it was only a receipt for the money paid, is not binding. *Eagle Packet Co.* v. *Defries*, 94 Ill. 599; *Illinois Central*

*R. R. Co.* v. *Welch*, 52 id. 187; *Schultz* v. *Chicago and North-western R. R. Co.* 44 Wis. 645; *Anderson* v. *Field*, 6 Bradw. 307.

The doctrine is, that the acts and contracts of persons who are of weak understanding, and who are liable to imposition, will be held void in equity if the nature of the act or contract justifies the conclusion that the party has not exercised a deliberate judgment, but has been imposed upon, circumvented, or overcome by cunning artifices. Story's Eq. Jur. 236; 4 Barb. 376; 1 Mumf. 557; 32 Ind. 126.

If a party designedly concealed a material fact which it was his duty to disclose, and upon which the other party had the right to rely, and did rely, for the purpose of misleading and deceiving the other party to his injury, he is guilty of positive fraud. *Jones* v. *Emery*, 40 N. H. 348. See, also, *Sims* v. *Cline*, Breese, 234.

If an assent to a contract is obtained by fraud, it will be wholly void. 1 Parsons on Contracts, 475, 476.

Mr. Justice Scott delivered the opinion of the Court:

It can not consistently be contended in this court, as was done in the lower courts, the evidence is not sufficient to sustain the verdict as to the alleged negligence of defendant in respect to the accident that caused the injury to plaintiff, nor that the evidence was not sufficient to warrant the jury in disregarding the alleged release of damages offered in evidence by defendant, as having been obtained through improper practices. These are questions of fact about which the evidence is conflicting, and as to which the jury found the issues against the position taken by defendant. The affirmance of the judgment of the Appellate Court implies a finding of the facts in the same way, and no further inquiry will be had in respect to them. In cases like the one at bar this court is required to re-examine cases brought to it by appeal or on writ of error, as to questions of law only, and the statute is

peremptory, no assignment of error shall be allowed which will call in question the determination of the inferior or Appellate Court upon controverted questions of fact.

Before passing to the consideration of the questions of law thought to arise on the record, it might be well first to ascertain the issues made by the pleadings that were submitted to the jury. The declaration charges defendant with negligence in regard to keeping its road-bed or track in a suitable and safe condition, as the cause of the accident that resulted in injury to plaintiff. The issues formed were, first, upon the plea of not guilty; and second, upon a special plea averring full payment and satisfaction, and discharge of all causes of action. Under these issues it was the duty of the jury to find, from the evidence, first, whether defendant had been guilty of negligence in regard to its track; and second, whether the release in evidence was so fairly obtained as to bar a recovery. On these issues the cause was tried in the circuit court. If it shall appear the evidence touching these questions of fact was conflicting, and no error of law occurred at the trial, it is plain the judgment must be affirmed, whether this court, on an original consideration of the evidence, would come to the same conclusion as did the trial and Appellate courts, or not.

It is conceded the trial court should not give an instruction to the jury where there is no evidence on which to base it,— or, what is the same thing, where there is no evidence which tends to support the hypothetical case assumed by the instruction. It is for the reason it directs the attention of the jury to elements of liability that do not exist under the evidence, and it is manifest error to do so. This is the settled law, and has been so often declared by repeated decisions of this court it is not necessary to cite authorities in its support.

It may be also stated, it is the practice in this court to examine the entire evidence, with a view to ascertain whether or not instructions were properly given or refused by the trial

court, and this duty is never omitted where the discussion makes it necessary to do so. That has been done in this case, with the utmost care.

As respects the negligence of defendant in regard to the condition of its track, which produced the accident, it is so much a question of fact no argument is made in this court on that branch of the case. It is as to the defence attempted to be made under the special plea, upon which a most elaborate argument has been made in this court. It is not denied plaintiff signed the paper in evidence, purporting to release defendant from all causes of action, for the consideration stated. Of course, if it was fairly obtained by the agents of defendant, and understandingly executed by plaintiff, it would constitute an effectual bar to the action. In respect to the alleged release, the manner in which it was obtained, and the condition of plaintiff, mentally and physically, at the time she signed it, the record contains a great deal of testimony, and much of it is irreconcilably conflicting. The accident to the train on which plaintiff was a passenger occurred about eight o'clock in the evening before the day on which the alleged release was signed. It was most probably signed between one and two o'clock in the afternoon of the next day after the accident. The injury to plaintiff was very severe, and the sequel will show it will be permanent. Her shoulder blade was fractured, and the muscles in that part of her body were very much injured. Since then she has not had the use of her left arm. Evidently the shock to her nervous system was very great. She suffered intense pain as soon as the sense of feeling returned after the accident. It appears she was placed in a car that had not left the track, and continued on her journey, and reached Keokuk at about eight o'clock the next morning after the accident, and was then taken to a hotel. She lived in this State, and was anxious to get home. During the night after the accident, whisky and morphine were administered to her on the cars, but in

what quantities the proof does not show with any certainty. It may be fairly assumed, from the evidence, the doses given were of the size usually administered to adult persons. On account of sickness, induced by pain, plaintiff slept none during the night, notwithstanding the opiates she had taken. She was still suffering great pain when she reached the hotel at Keokuk. Shortly after arriving at the hotel she was visited by a division superintendent of defendant's road. It is probable, from the evidence, he visited her twice that forenoon. Perhaps the last visit was near twelve o'clock. It was at the last visit it is said he negotiated a settlement with her, in pursuance of which the alleged release was afterwards obtained. The replication to the plea of accord and satisfaction puts in issue the fairness of obtaining from plaintiff the release insisted upon so confidently as a bar to the action. On this branch of the case the court was asked by defendant to instruct the jury "there is no sufficient evidence in this case to warrant inference of fraud, and the court instructs the jury to find a verdict for defendant." The refusal of the court to so instruct is complained of as error. Without entering upon any analysis of the evidence, it is sufficient to say it was of that character the court would not have been justified in withdrawing the case from the jury, or, what is the same thing, instructing the jury to find for defendant. It would have been plainly error in the court to have so instructed. Asking an instruction to withdraw a case from the jury is, in effect, the equivalent of a demurrer to the evidence. A demurrer to evidence is understood to admit everything it tends to prove. Applying that principle to this case, and admitting all the testimony tends to prove, this court has no hesitation in saying it is not a case that ought to have been taken from the jury, or where the jury should have been instructed to find for defendant.

The assignment of errors in this court raises broader and more comprehensive questions. First, under the law, prop-

erly applied to the facts, the judgment in the circuit court should have been reversed; and second, the facts disclosed in the record show that plaintiff in the court below had no legal cause of action. As the argument is understood, it is insisted these are questions of law, and are open for consideration in this court. On the facts, as counsel insist the record discloses them to be, an argument is made they show plaintiff had no cause of action in law, and for that reason it is said the judgment should now be reversed by this court as for an error in law in affirming the judgment by the Appellate Court. Were the facts of this case uncontroverted, or stood admitted, the writer of this opinion would most freely admit it would then be a question of law, open for consideration in this court, whether the admitted facts constituted a legal cause of action. But that is not the case here. On every phase of the case the evidence is conflicting, and touching the manner of obtaining the alleged release it is irreconcilably so. For instance, two witnesses (one an employee of defendant, and the other totally disinterested,) state most positively the alleged release was read to plaintiff before she signed it, while two witnesses (one the plaintiff, and the other wholly disinterested,) state with equal positiveness the release was neither read nor explained, as it was in fact written, to plaintiff before she signed it. All of these witnesses had the same means of knowing the facts concerning which they testified, as all of them were in the same room during the entire time,—a brief period of a few moments,—and all were giving special attention to what was being done. Whether the alleged release was fairly obtained, was a material fact, and concerning its execution the testimony of one or the other set of witnesses would seem to be untrue. It would hardly seem there could be any room for a misapprehension. Counsel do not appear to consider the jury have found the facts to be different from what they understand the record to disclose them to be, and that an affirmance of the judgment implies a

finding of the facts in the same way the trial court did.   That
being so, no further discussion can be had concerning them.
But what did the trial court find?   First, under the plea of
not guilty, the jury must have found defendant was guilty of
negligence in regard to that which .produced the accident by
which plaintiff was injured.   The evidence tends to establish
that fact, and it was material to a recovery.   Second, under
the special plea, it must have been found defendant did not
pay plaintiff a sum of money in satisfaction and discharge of
the cause of action, for that was the extent of the replication
on which issue was taken to the country, otherwise the ver-
dict would have been for defendant.   No error has been
assigned in this court calling in question the correctness of
these findings as to the facts.   The error assigned is, that on
the facts as they are *disclosed* by the *record*, they show plain-
tiff has no cause of action.   How is it to be determined what
facts the record discloses ?   It is certainly not to be ascer-
tained by this court, where the evidence is conflicting.   Cases
brought to this court on appeal or writ of error are to be
re-examined on questions of law, only.   Assuming, as must
be done, the facts are as the trial and Appellate courts have
found them to be, it must be conceded, under the law, they
show a legal cause of action in favor of plaintiff.

Passing now to consider the objections taken to the instruc-
tions given for plaintiff, it will be seen the fourth and fifth of
the series, although couched in different phraseology, in fact
assert the same principle, and may be considered together.
It is stated as a matter of law, if the release was obtained
from plaintiff by representations or acts of defendant's agents
which induced in her mind the belief it was only a receipt
for money paid her at the time as compensation to her for
loss of time and expenses incident to the delay that had
resulted from the accident, and not as a discharge of defend-
ant from any claim she might have against the company for
injuries sustained, or if it was obtained by fraud and circum-

9—109 ILL.

vention on the part of the agents of defendant, the writing would be void as to her. So far as these charges assert a proposition of law, no definite objection is pointed out to either of them, nor is any perceived. Fraud vitiates everything it touches, and if the alleged release was obtained by fraudulent practices on the part of the agents of defendant, it need hardly be said it would not be obligatory on the party signing it, and certainly if she was induced to sign it under the belief, created by defendant's agents, she was simply signing a receipt for expenses, defendant would not be permitted to plead it as a defence to the action. That would be to have an advantage from its own wrong, which the law will not tolerate. A principle closely analogous to that embodied in the fourth instruction given, was declared to be the law in *Eagle Packet Co.* v. *Defries,* 94 Ill. 599. And in the case of *Illinois Central R. R. Co.* v. *Welch,* 52 Ill. 183, in considering a release in terms quite broad enough to cover the action, it was said, if the plaintiff was induced to sign it by representations it would cover merely his claim for a month's wages, or if he signed it under such belief induced by the words or acts of the agents of defendant, then the release would not be a bar to the suit. Other cases might be cited, but these are sufficient to show the propositions of law embodied in these charges are stated with sufficient accuracy.

The seventh instruction, of which complaint is made, contains two distinct propositions, and will be considered separately. First, if obtained from plaintiff while under the influence of opiates or liquor taken to alleviate pain, and she was incapacitated to contract, then the release was no defence to the action; and second, it was not necessary for plaintiff to pay back, or offer to do so, the money received at the time of signing the alleged release, as a condition precedent to her right to bring suit for damages. As respects the first proposition contained in this charge, some criticism is made on it hardly warranted by a natural and correct reading. It means,

simply, that if plaintiff was under the influence of opiates to that extent she was incapacitated to contract, then the paper executed by her would not be obligatory, and understood in that sense, as any one would most naturally read it, obviously it is the law. It is in entire harmony with the doctrine of *Bates* v. *Ball,* 72 Ill. 108, the correctness of which is not questioned.

With regard to the second proposition, it may be safely stated as undeniable law, if the release was obtained by fraud, at a time when plaintiff was incapacitated to contract, it was absolutely void from the beginning as between the parties, and will stand in the way of the assertion of no right by the party defrauded. On principle, an instrument absolutely void needs not to be rescinded to remove it out of the way of the assertion of a right. It is for the obvious reason it never had any binding force, and there was therefore nothing to rescind. A contract void on account of fraud, or for any other reason, is, in law, as though it had never been executed. The case of *Mueller* v. *Old Colony R. R. Co.* 127 Mass. 86, has many features in common with the one being considered, and is an authority in point.

But the position taken with most seeming confidence is, there is no evidence that would warrant the giving of either of these instructions, and the insistence is, as they submit matters to the jury not sufficiently proven, it was error to give them. The argument made on this branch of the case rests on a mistaken view of the evidence. It is not entirely accurate to say there is no evidence on which to base the instructions, nor that there is not sufficient to warrant the giving of them. Whether the conclusions of this court, if it were considering the case with a view to determine the facts, would accord with the conclusions reached by the trial jury and the Appellate Court, is a matter of no consequence. The evidence in this record has been subjected to a careful consideration, and it is seen there is evidence tending, in some

degree at least, to sustain every proposition submitted to the jury by the instructions. 'With the weight and credibility of this testimony this court has no concern. The determination of such questions is committed by law to other tribunals. It is sufficient if there is evidence on which to base the charges given to the jury.

Concerning the issue made by the replication to the plea of release, that no sum of money was paid in "satisfaction and discharge" of the causes of action mentioned in the declaration, the evidence is ample to justify the giving of the fourth and fifth instructions. Even the testimony of the superintendent alone, if the record contained no other, would be sufficient. There is testimony, and some of it quite satisfactory, that tends to show plaintiff was induced to believe the money was paid to her for expenses that she would incur in consequence of the accident, and not as a release of damages for the injuries sustained. It may have been under that belief she signed the alleged release. No negligence, under the circumstances, can be imputed to her on account of a failure to read the paper before signing it. She was in her private room at the hotel, suffering at the time the most intense pain, was partly disrobed, and was being attended by a lady,—a casual acquaintance,—who had been applying liniment to her person, and was then combing her hair, when two strange men entered the room to secure her signature to the paper. The interview lasted only a few moments. Evidence given is to the effect she was told by one of the men it was a receipt he wished her to sign for the money the superintendent had sent to her. There is also testimony that tends to show the paper was not read to her by the man that brought it to her for her signature. It is a matter of no consequence, so far as the decision of the case in this court is concerned, the record contains evidence flatly contradictory to that just stated. Involved, as the facts are, in conflicting testimony, but situated as it is conceded plaintiff was, it could hardly

be expected she would read the paper as a careful business man would or ought to do before signing it. The omission, under the circumstances, to read the paper signed by her is certainly not such negligence as ought to bar her from asserting the truth as to the manner in which it was obtained from her. Situated as she was, she might well be excused from reading a paper she was about to sign, which, she says, she was told was a receipt for the sum of *twenty* dollars, for expenses. Conceding the fact to be well found, as must be done, that plaintiff was induced, by the acts of the agents of defendant, to sign the paper, under the belief it was a mere receipt for expenses, then that would be a fraud upon her, and the alleged release would constitute no bar to the present action.

On the other clause of the instruction, concerning the incapacity of plaintiff to contract, it must be conceded the testimony is not as full as it is upon other branches of the case, but still there is enough to justify the court in submitting that phase of the case to the jury, as was done by the seventh charge. It is to be remembered the accident occurred about eight o'clock in the evening. Afterwards plaintiff was placed in another car, and continued on her journey through the entire night, and arrived at Keokuk the next morning about nine o'clock. During the night whisky and morphine were administered to her at frequent intervals. Neither the number of doses nor the exact quantity of each that was given to her is known with any certainty. The testimony of the physicians examined is not satisfactory or harmonious as to the effect the medicines would produce, or as to how long the effect would continue. Indeed, they all concur that could not well be determined unless the quantity given was definitely known. It is certain the shock to the nervous system of plaintiff was very great, and that, with the effect of the medicines, might have had some effect on her mental condition. It was while she was in that condition,—mentally and phys-

ically,—within a few hours after her arrival at the hotel in Keokuk, after a night of most intense suffering, that had certainly not passed off, that she was approached in her private room by defendant's division superintendent, as he says, to procure a settlement of any cause of action or claim she might have against the company. This, it must be admitted, was unseemly haste, and whether plaintiff was "incapacitated to contract," it may be safely said she was in no condition to consider, with any degree of deliberation, a matter so grave as that submitted to her.

But another view may be taken. It is not necessary the court should be satisfied the hypothetical case stated in an instruction is fully sustained by the testimony before it would be required to submit it to the jury. That would practically include the services of a jury, and would debar a party of the constitutional right to have his cause tried by a jury. The court might take one view of the evidence, and yet, if submitted, a jury might reach a different conclusion, and it is for that reason a party has the right to have submitted any hypothetical case the testimony tends to sustain, otherwise the court might try the cause without the intervention of a jury in the first instance. But that, of course, could not be done over objection taken. Even positive testimony is not always required. It has been held by this court, in cases where there was no direct evidence of a material fact, that circumstances proven from which the fact might reasonably be inferred, would be sufficient on which to base an instruction. It was so ruled in *Chicago, Burlington and Quincy R. R. Co.* v. *Gregory*, 58 Ill. 272, and also in *Missouri Furnace Co.* v. *Abend*, 107 Ill. 44

After a most careful consideration, no error is perceived in the record of sufficient gravity to warrant a reversal of the judgment, and it must be affirmed.

*Judgment affirmed.*