## ACTION FOR DAMAGES WHERE A RELEASE IS PLEADED.

Circuit Court of Franklin County.

NELSON P. ROBINSON ET AL V. CORNELIUS V. EASTON.

Decided, February 7, 1911.

*Release—Pleaded in an Action for Personal Injuries—Tender Back of Amount Received Not Necessary, When—Releases which are Void and Those which are Voidable Only—Negligence—Weight of Evidence.*

1. Where, in an action for damages for personal injuries a release is pleaded by the defendant and the plaintiff denies in his reply that he ever entered into such a contract of release, the plaintiff is not bound to tender back the amount paid to him by the defendant in consideration of the alleged release.

2. A claim that the injuries received were due to the breaking of a chain which contained an open link, of which the defendant is alleged to have had knowledge and the plaintiff supposed had been repaired, raises a question of negligence which is peculiarly within the province of the jury, and where the testimony tends to support the claim a determination by the jury in favor of the plaintiff will not be set aside on the weight of the evidence.

ROCKEL, J.; DUSTIN, J., and ALLREAD, J., concur.

The plaintiff below brought an action against the defendant below for damages alleged to have occurred by the falling of a derrick upon the plaintiff, whereby the plaintiff was injured, said derrick having fallen by virtue of alleged negligence of the defendant below in not repairing or having a proper guy.

To the petition the defendant filed an answer of general denial and also alleged contributory negligence, and as a third defense set up the following:

"That before this action was brought and that no alleged cause of action having accrued for plaintiff's said injuries, to-wit, on the 4th day of February, 1907, these defendants paid to the plaintiff herein in compromise and satisfaction of any and all claims or causes of action arising out of said injuries, the sum of

$29.25. That said plaintiff accepted the same in full satisfaction and discharge of any and all claims or causes of action arising out of his said injuries; that said plaintiff executed and delivered to defendants a release in writing, a true copy of which is as follows: 'Received of the Columbus Hoop Company this 4th day of February, 1907, the sum of $29.25 in full satisfaction and discharge of all claims accrued or to accrue in respect of all injuries or injurious results, direct or indirect, arising or to arise from an accident sustained by me on or about the 15th day of January, 1907, while in the employment of the above.

" 'Witness:                                          C. V. EASTON.
    " 'WINIFRED ALTWATER,
       " 'Address, 276 E. 11th Avenue.' "

To this answer plaintiff filed a reply admitting that on or about the 4th day of February, 1907, he signed some instrument of writing and admits that he received about $29.25 at said time. Plaintiff denies that he ever agreed to accept said money in full satisfaction and discharge of any claims or causes of action arising out of said injuries, and alleges that if the said writing which he did sign purports to be a receipt in full satisfaction and discharge of any or all claims for causes of action arising out of his said injuries, he was ignorant of that fact; that his signature thereto was obtained by false and fraudulent representations on the part of defendants in this, to-wit:

"That defendants represented to plaintiff that said writing was merely a receipt for wages due him from said defendants; that plaintiff relied upon the said representations, and, believing them to be true, signed said writing without reading the same or knowing what it contained."

The case was tried to a jury and a verdict returned for the plaintiff. A motion was made by the defendant for a new trial which was overruled, and error was prosecuted to this court.

The principal errors relied upon by the plaintiff in error for reversal of judgment are two: The first being that the issue raised by the pleadings upon the matter of the release would not warrant a judgment for plaintiff, because there was no tender pleaded of the amount received in the release, and that neither the pleadings nor the evidence showed that it was that kind of a

contract that could be set up as a defense without pleading tender of the money received or having the instrument first reformed by a court of equity.

In the case of *Perry* v. *O'Neil*, 78 O. S., 200, we have this in the syllabus:

"A release of a cause of action for damages for personal injuries that is void is not a bar to such an action, and the plaintiff may, if it is set up by answer as a bar to his right of action, by reply, aver the facts that make it void. But if it is not void but only voidable, he can not maintain his action until the release is set aside."

This decision of the Supreme Court is unfortunate in not making clearer what is intended to be included or necessary to constitute a void contract within the language of the syllabus. That it might be meant to include such a contract as the one under consideration, even though it were not what is ordinarily considered as a void contract is borne out from the opinion in the case as well as the construction that has been given thereto by other courts.

In the case of *Railway* v. *Coleman*, 12 C.C.(N.S.), on page 500, in considering a case somewhat similar to the one at bar, we have this language of the court:

"If what I have read were established, it would appear that the release was absolutely void. If it were true that Coleman at the time was unable to read by reason of these injuries to his eye and if he was deceived by Mr. Latta, his superior in the employ of the company, as to the contents of the paper, if he signed the paper under such circumstances, supposing it to be one thing whereas it was an entirely different thing, that is to say, a mere matter of form that he must sign before he can work again, whereas it was a release of all claims against the company, if his signature was obtained under such circumstances and by such method, the release would be absolutely void, and under the authorities this issue of release might be raised by reply setting forth the facts showing that the release was void."

So, we are constrained to believe that what was intended by the Supreme Court was, that if the contract were such, in this kind of cases, that a court of equity could or would set it aside, that

the defense could be made that the contract was invalid without pleading a tender of the money received. The case in the 12th Circuit was affirmed without opinion by the Supreme Court. That this was the idea that pervaded the mind of the judge rendering the opinion in 78 O. S., 209, is clear from this language:

"If a party suing to recover for personal injuries admits the execution of a release and seeks to avoid it on equitable grounds, he must obtain that relief to maintain his action, when he denies the execution of the release, or that it is his act, on the ground of want of mental capacity at the time he signed it, or that his signature to the release was procured by fraud, such as misreading, the surreptitious substitution of one paper for another or obtaining by some other trick or device an instrument which he did not intend to give, he may maintain his action without obtaining a decree. In other words, if the release is void, he may ignore it in his petition, and if it is plead as a bar in the answer, he may in his reply plead the facts that make it void; if it is not void but only voidable, he must, to maintain his action, obtain its rescission or cancellation."

And quoting further, he says (p. 210):

"At common law it has often been held incompetent to a defendant suing at law on a specialty to plead that the instrument was obtained by false representation: it is a case, it is said, for equity alone. It is clearly otherwise of the execution of the instrument, as where the bond is misread to the obligor, or where his signature is obtained to an instrument which he did not intend to sign. In such cases fraud may be alleged at law."

In this opinion a large number of cases are given and quoted from where a release has been set aside without pleading tender of money received. In the case at bar, it was shown by the testimony that during the time that the plaintiff was confined to his home by reason of the injury suffered in the accident, that the defendant gave some money to his wife and also furnished him some coal; that when the plaintiff got so he could be on his feet, although suffering considerably, he went to work again. After he had been at work a few days, the defendant called him into the office and while the plaintiff was there sitting by the fire to get his feet warm, the defendant came in and called to the

plaintiff and said to him something about the money that "we have paid you"; that defendant hesitated a few moments, and that plaintiff said that, "I can't pay you all at one time. You will have to take it out a little at a time until I get you paid as my wages is not large enough that I could pay it all at one time." "Well," he says, "As far as that is concerned the only thing we want is something to show where the money has went, and we have prepared a little receipt here that we would like for you to sign so as to make us good." Plaintiff spoke up and said, "Alright." Defendant turned to Altwater, his son-in-law, and said, "Winifred, get that paper." He got the paper, put it on the writing desk, dipped the pen in the ink, and handed it to plaintiff, who signed it.

Plaintiff says that he understood that this was for money that had been advanced in the past, and that he thought for lost time, that they would keep him on the pay-roll during the time that he had been laid off by reason of the accident. He denies absolutely that it was a receipt to relinquish all his right and claim against the defendant for the injuries resulting from the accident; that he had no intimation or knowledge whatever that the paper he signed was anything more than merely an acknowledgment of the money that had been paid to his wife, or for necessaries furnished him and his family during his illness; that he did not read it but relied entirely on the statement that was then made in reference to the character of the paper that he was signing. Whether or not he was fraudulently led to believe that the paper he signed was a different one from what it was, was a question of fact for the jury. The defendant below testified that he explained to him that it was a release in full.

There are some circumstances, however, which tend to support the plaintiff's version of the giving of this release, and that is that it was for a peculiar sum, to-wit, $29.25, and that it would hardly be likely that a sum of dollars and odd cents would be given for a release in full of injury, and that it was probably what plaintiff contended, a mere release or receipt for the money that had already been paid, and, as he claimed, was requested by the defendant below for the purpose of showing on their books or something of that character.

Both by the pleadings and the evidence in the case at bar plaintiff denied absolutely that he made or entered into a contract releasing the defendant from liability for the injuries that he had received, and that in fact no contract of that kind had ever been entered into, and as no new inducement was, even by the admitted facts, given him to sign the paper he did sign, other than the mere extinguishment of a past obligation, it might be in fact held that no consideration moved to him for the execution of the release.    Other states have held that releases might be set aside or held for naught in such actions without pleading a tender.    A very strong case is that of *Chicago Railway Company* v. *Lewis,* 109 Ill., 120, where it is said:

"If such a release is procured by fraud and circumvention, it will be void as to the party so induced to execute the same. Fraud vitiates everything it touches, and a party will not be allowed to avail of an undue advantage obtained over another by fraudulent purposes."

In *Cleary* v. *Municipal Electric Light Co.,* 19 N. Y. (Supplement), 951, is a case very much similar to the one at bar.    Here it is said:

"A release from liability for personal injury signed by the injured employe under his statement that it was a mere receipt for wages or gratuity is no bar to a future action."

In the opinion, it is said:

"Therefore, in this case, if the plaintiff had admitted the compromise or his execution of the release, but claimed that he had been induced to make the compromise by fraud, duress or imposition, he would have been bound to return the consideration received before he could maintain the action.    But that was not the issue in the case.    Plaintiff did not seek to avoid the contract of compromise.    He denied making any such contract."

So, in the case at bar, the plaintiff denied that he made any such contract, and we think, therefore, that the plaintiff was not bound to tender a return of the payment made.

The plaintiff in error contends this case is controlled by *Manhattan Insurance Company* v. *Burke,* 69 O. S., 294.    But the de-

cision in the case is on a different state of facts, as the following from the opinion indicates, p. 307:

"There being in this case a controversy between the parties, a disputed claim which the parties, being *sui generis* at the time deliberately settled, the one executing a full and sufficient release, intending to do just what he did do, and the other paying a money consideration therefor, the release whether obtained by fraudulent representations or not is binding until set aside, either by a tender or return of the money received, or by a direct proceeding in equity for that purpose," etc.

In the case at bar there was no dispute or controversy between the parties. The plaintiff below had made no claim for injuries. There was no dispute or controversy about anything. The plaintiff did not intend to do what the release purports. Neither is the case at bar similar to *Conrad* v. *Keller*, 12 C.C.(N.S.), 126; 8 N.P.(N.S.), 535. In this latter case there was a *settlement*, although it was fraudulently entered into. In the case at bar plaintiff denies there ever was a settlement concerning his injuries, and the evidence seems to sustain his contention. The admitted settlement is upon another matter, to-wit: money paid previously on wages or furnished as a gratuity.

Upon the second question as to whether or not the verdict is against the manifest weight of the evidence, we think it is not. The evidence clearly shows that the accident was caused by the breakage of the chain which was attached to a cable or guy and extended from the cable or guy to the derrick pole, and was a means of fastening the guy to the pole. This chain was several feet in length and the cable or guy was for the purpose of giving support to the derrick. On the day of the accident the plaintiff was working at a windlass or something of that character at the derrick pole, and this was used to raise logs and place them in different positions. A few days before the time of the accident, according to the plaintiff's testimony, he had learned that there was an open link in this chain and called attention to the fact that the fastening of this guy to the derrick pole by means of this chain, etc., was dangerous and unsafe, and that the defendant promised to fix the same. Plaintiff was then laid off a day or

two and when he came back to work he assumed that as the defendant had promised to fix the same, that it had been fixed. This pole was some thirty-five or forty feet high, if we remember right, and the chain being at the top of the pole, the plaintiff could not by observation have seen whether it was fixed or not.

The defendant denies this matter as to his being informed of its defective condition and his promise to remedy it. Defendant further contends that the plaintiff was guilty of contributory negligence—that the log the men were moving at the time the cable gave way was a large one, and that he had instructed the men working at the same to saw it in two before they attempted to move it.

The plaintiff denies that he heard any such conversation, and from the work that he was doing at the time the accident occurred it is not clear that he had much to do with selecting the log or fixing the fasteners thereto.

We think the evidence clearly shows that the accident was caused by the breakage of this chain, and that the breakage did occur by reason of this open link pulling apart and breaking. Slater's testimony is clear upon this question, and there is no testimony that shows the contrary. The question of negligence is one which is peculiarly within the province of the jury to decide, and we are not able to say that the verdict of the jury is against the manifest weight of the evidence or that the judgment is contrary to law.

We, therefore, find no errors of record prejudicial to the plaintiff in error, and the judgment of the court below is affirmed.