————o————

JAMES E. LINCOLN, Plaintiff in Error, *vs.* THOMAS ROWE, NANCY ROWE AND JAMES M. JONES, Trustee, Defendants in Error.

1. *Married women, rights of—Note by—Effect of signing to charge separate estate.*—A married woman for whose separate use real estate has been conveyed to a trustee has the power to charge that property by the execution of a promissory note, in conjunction with her husband, and such act is presumptive evidence of such intention.

### *Error to Clay Circuit Court.*

*Samuel Hardwick & James E. Lincoln,* for Plaintiff in Error.

The petition alleges that she signed the note. The chancellor will declare from the fact that the wife signs the note, that she meant to charge her separate estate. (2 Sto. Eq., § 1401 ; Whitesides vs. Cannon, 23 Mo., 457.)

It has been the uniform practice of our courts of equity in similar cases, to grant such relief as is asked by this bill. (Coats vs. Robinson, 10 Mo., 757 ; Whitesides vs. Cannon, 23

Lincoln v. Rowe et al., Trustees.

Mo., 457; Claflin vs. Van Wagoner, 32 Mo., 252; Schafroth Admr. vs. Ambs, 46 Mo., 114; Miller vs. Brown, 47 Mo., 504; Kimm vs. Weippert, 46 Mo., 532.)

*John G. Woods*, for Defendant in Error.

The petition itself shows that the defendant, Nancy Rowe, received no benefit whatever from the debt created by the note sued on; for it is admitted, that she owned the property, that her title was good, and was not obtained fraudulently.

As the debt therefore was no advantage to her, signing the note will not bind her property. (Hansee vs. DeWitt, 63 Barb., 53; Kimm vs. Weippert, 46 Mo., 532; Higgins vs. Peltzer, 49 Mo., 152; Bauer vs. Bauer, 40 Mo., 61.)

The note was entirely without consideration, so far as Nancy Rowe was concerned, and as to her, plaintiff's petition contains no equity; and a court of equity will protect her interest. (Schafroth, Admr. vs. Ambs, 46 Mo., 114.)

SHERWOOD, Judge, delivered the opinion of the court.

This was a proceeding in the nature of a bill in chancery, brought by James E. Lincoln in the Circuit Court of Clay County, against Thomas Rowe, Nancy, his wife, and James M. Jones, trustee for said Nancy, to subject certain real estate to the payment of a debt.

The petition in substance charges, that Thomas Rowe was indebted to plaintiff, in about the sum of $150; that plaintiff brought suit, obtained judgment for such indebtedness, had execution issued and levied upon certain real estate, and when the same was sold thereunder, bought it in, and received a deed from the Sheriff therefor; that said real estate was at the time of the said purchase, held in trust by one Shay, for the use and benefit of said Nancy, wife, as aforesaid. The petition alleges that plaintiff commenced suit after his purchase, to set aside said conveyance to Shay, and while said suit was pending, defendant Thos. Rowe, and his said wife Nancy, proposed to compromise said suit, and if plaintiff would dismiss the same, they would execute their note to him for $150, payable in sixty days; that this proposition was accepted, said

suit dismissed, and said note for said sum executed and delivered to plaintiff. by said Thomas and Nancy; that at the time of the execution of the note and long prior thereto, and up to that time, Thos. Rowe was hopelessly insolvent. That the object of Nancy Rowe in signing the note was to charge and bind the property, which Shay, her trustee, then held for her benefit, and that plaintiff knowing the insolvent condition of Thomas Rowe, refused to take the note until it was signed by the wife Nancy Rowe. That Shay removing from this State, Jones, defendant, was appointed his successor as such trustee; and the land sought to be charged, was then described. That the object and intent of said Nancy Rowe, in executing said note, was to charge said land with the payment of the note. That said Jones then held the real estate in trust, for the sole and separate use of the wife, and that said note is due and unpaid.

The petition then concludes with a prayer for the subjection of said real estate to the payment of the debt, and that the land be sold for that purpose, &c.

The defendants filed a demurrer to this petition, and as grounds therefor, assigned that: several causes of action were improperly united in this, that judgment was sought against two of the defendants on a promissory note, and the land of the other defendant asked to be subjected to sale for the payment of that note; that the plaintiff sought to bind the property of a married woman for the payment of her husband's debt; and that the instrument declared and showed that the wife did not bind, nor intend to bind, her separate property.

The petition was adjudged insufficient, final judgment on demurrer was entered, and the plaintiff brings this cause here by a writ of error.

There is but one cause of action set forth in the petition, and its sufficiency depends solely upon the power of a married woman, for whose separate use realty has been conveyed to a trustee, to charge that property by the execution of a promissory note in conjunction with her husband.

The allegation is made in the petition, which the demurrer

confesses to be true, that the wife joined with her husband in making the promissory note, with the avowed purpose of charging her separate property, and that this was done by way of compromise, and in consideration of the dismissal of a suit brought by plaintiff, and then pending, to divest her trustee, Shay, of the title held by him for her benefit, in the real estate now sought to be subjected to the payment of that debt.

When courts of equity, in contravention of the strict rules of old common law, promulgated the principle that *quoad* her separate estate a *femme covert* was a *femme sole*, they thereby dug the channel for that stream of consequences, which necessarily flows from such a fountain; viz: being the owner of the property, the *jus disponendi*, and other ordinary and inseparable incidents of ownership, would immediately attach thereto.

And thus it was held at a very early day in the history of equity jurisprudence, that a *femme covert* although powerless to make a contract which would bind her personally, or at law, might so charge her separate property as to subject it to the payment of her debts.

It would be a hopeless task to endeavor to reconcile, and a profitless one to even compare the multiform and nebulous decisions, which have been made by the highest courts, both of England and of this country, as to the character of the acts, necessary on the part of a married woman to evince her design to create a liability, for which her separate estate could alone be held answerable.

But by all the authorities it is held that whenever such intent is manifested in the appropriate way, the universally conceded result of holding her property chargeable will certainly ensue.

The petition at bar would undoubtedly be free from objection, even in those courts which hold that the engagement must be made with reference to, and upon the faith of the married woman's estate; for such a contract is therein most explicitly averred.

In this State however, the principle, that as the execution

by a *femme covert* of a promissory note, would be wholly meaningless and inoperative, unless intended to charge her separate estate, that therefore such act is presumptive evidence of such intention, has become a rule of property and is settled upon a too well established basis to be " now blown about by every contrary wind of doctrine." (Coats vs. Robinson and Hadley, 10 Mo., 757; Whitesides vs. Cannon, 23 Mo., 457; Claflin vs. Van Wagoner, 32 Mo., 252; Schafroth Admr. vs. Ambs, 46 Mo., 114; Kimm vs. Weippert, *Id.*, 532.)

The judgment is reversed and the cause remanded; the other judges concur.