BLAIR *et al.* v. CHICAGO & ALTON RAILROAD COMPANY
*Appellant.*

1. **Married Woman**: RELEASE: STATUTE. A married woman, since the married woman's act of 1875 (R. S., sec. 3296), can execute a valid release of damages for injuries to her person, without joining her husband in the release.

2. **Married Woman's Act.** The above statute (R. S., sec. 3296), confers on a married woman all the powers of a *femme sole* as to the property mentioned in it.

3. **Equity**: FRAUD: MISTAKE. Equity has jurisdiction to relieve from contracts where there has been fraud or a mistake of such a character as to show no *aggregatio mentium*.

4. ———: RELEASE. Where an instrument is so general in its terms

| 89 | 383 | 89 | 383 |
| 96 | 525 | 75a | 581 |
| 97 | 180 | | |
| 89 | 383 | 89 | 383 |
| 98 | 551 | 145 | 198 |
| 35a | 435 | 150 | 281 |
| 89 | 383 | 89 | 383 |
| 41a | 515 | 154 | 120 |
| | | 154 | 432 |
| 89 | 383 | 81a | 137 |
| 102 | 236 | 89 | 383 |
| 89 | 383 | f 165 | 446 |
| 104 | 49 | | |
| 44a | 428 | | |
| 89 | 383 | | |
| 45a | 514 | | |
| 46a | 91 | | |
| 46a | 119 | | |
| 89 | 383 | | |
| 48a | 447 | | |
| 89 | 383 | | |
| 53a | 223 | | |
| 89 | 383 | | |
| 115 | 204 | | |
| 117 | 18 | | |
| 89 | 383 | | |
| 56a | 392 | | |
| 89 | 383 | | |
| 122 | 667 | | |
| 123 | 370 | | |
| 123 | 379 | | |
| 123 | 389 | | |
| 123 | 461 | | |
| 87 | 383 | | |
| 127 | 335 | | |
| 89 | 383 | | |
| 130 | 49 | | |
| 89 | 383 | | |
| 139 | 330 | | |
| 139 | 454 | | |

Blair v. The Chicago & Alton Railroad Company.

as to release the rights of a party of which he was ignorant, and which were not at the time within the contemplation of the agreement it will be restrained to the purposes of the agreement, and confined to the rights intended to be released.

5. ———: REMEDY AT LAW NOT PLEADED. A court of equity will grant relief notwithstanding the existence of a remedy at law, unless the defendant pleads the remedy at law in defence of the equitable suit.

6. Code: JOINDER OF EQUITABLE AND LEGAL COUNTS. Under the code a count in equity to set aside a release of damages for personal injuries, can be joined with one at law for the recovery of the damages.

7. ———: MISJOINDER, WAIVER OF. Objection because of misjoinder of causes of action must be raised by demurrer or it will be waived.

8. Pleading, Amendment of. The court may permit an amendment of the petition after the close of the evidence and the conclusion of the argument of counsel.

9. Practice: CONTINUANCE. An application for a continuance because of the absence of a witness must show due diligence on the part of the applicant to procure the attendance of the witness.

10. ———: ———. Every intendment exists in favor of the correctness of the action of the trial court on such application.

11. ———: PRESUMPTION. Where the consideration for a release of damages for personal injuries was ordered to be deposited with the clerk and the cancellation of the release decreed, it will be presumed on an appeal from a judgment in an action at law for the damages, the record being silent on the subject, that the required deposit was made.

12. Witness: PHYSICIAN: STATUTE. The statutory protection against a physician testifying as to communications from a patient may be waived by the latter.

13. Personal Injuries: DAMAGES. In an action for personal injuries, the jury in estimating plaintiff's damages should consider every fact in the case which tended to increase the amount of her pain, or the extent of her injuries.

*Appeal from Jackson Circuit Court.*—HON. F. M. BLACK Judge.

AFFIRMED.

Blair v. The Chicago & Alton Railroad Company.

*Lathrop & Smith* for appellant.

(1) The court erred in setting aside the release. The right of action for the injuries received was Mrs. Blair's separate property. Being her separate property she had the *jus disponendi* the same as though she were *sole*, and hence it was unnecessary for her husband to join in the release. He is obliged to be joined in a suit simply to conform to the requirements of the statute. Aside from the presumption of sanity which the law makes, it appeared from the clear preponderance of the evidence that she was perfectly *compos mentis* at the time she signed the release; no fraud being shown, the inadequacy of the consideration could not be urged; and, consequently, the release ought to have been allowed to stand. Subsequent insanity, even if proved, is no ground for setting the release aside. R. S. 1879, p. 560, sec. 3296; *Railroad Co. v. Dunn*, 52 Ill. 260; *Flori v. St. Louis*, 3 Mo. App. 231, 240; *Alt v. Meyer*, 8 Mo. App. 198; Story's Eq. Jur. [12 Ed.] secs. 1388, 1393; 1 White & Tudor's Leading Cases in Eq. [4 Am. Ed.] pt. 2, pp. 685–88; *Siemers v. Kleeburg*, 56 Mo. 196, 200; *DeBaum v. Van Wagoner*, 56 Mo. 347; Chitty on Contracts [11 Ed.] 186, 191. (2) The motion for a continuance should have been granted, and the Supreme Court will interfere where the discretion of the lower court on the matter has been improperly exercised. *Leabo v. Goode*, 67 Mo. 126. (3) The objection to the testimony of Dr. Dunn, and of the other physicians whose depositions were read to the jury, ought to have been sustained. The plaintiff had no right to waive the protection of the statute. The express right to waive accorded in the case of attorney and client, is the clearest possible legislative expression that the right was excluded in every other case. *Expressio unius est ex-*

*clusio alterius.* 1 R. S. 1879, p. 690, sec. 4017; *Wilson v. Rastall*, 4 Durn. & E. 760; *Johnson v. Johnson*, 4 Paige Ch. 460, 468; *Grattan v. Insurance Co.*, 80 N. Y. 281, 300; *Briggs v. Briggs*, 20 Mich. 34; *Mutual Benefit Association v. Beck*, 77 Ind. 203; *Railroad Co. v. Raymond*, 13 Am. & Eng. R. R. Cases, 6; *Harriman v. Stowe*, 57 Mo. 93; *Gartside v. Conn. Mut. Life Ins. Co.*, 76 Mo. 446; Broom's Legal Maxims, *505, 517, [8 Ed.] *664, 666; Dwarris on Statutes, 605. (4) The demurrer submitted at the close of plaintiffs' evidence, and again at the end of the case, should have been sustained. In the judgment setting aside the release it was ordered that plaintiffs deposit with the clerk of the court, for the use and benefit of defendant, the sum of thirty dollars, paid as the consideration therefor. That deposit plaintiffs should have made before proceeding to trial upon the merits. To show that it was made was part of plaintiffs' case, and a failure to make that showing is an error which their verdict does not cure. *Williams v. Ketchum*, 21 Wis. 432; *Coolidge v. Brigham*, 1 Metc. 547; *Estabrook v. Swett*, 116 Mass. 303; *Emerson v. McNamara*, 41 Me. 565; *Evans v. Gale*, 21 N. H. 240; *Cook v. Gilman*, 34 N. H. 556. (5) Instruction number ten, asked by the defendant, should have been given. 1 Chitty's Pleading [6 Am. Ed.] 440; *Dickinson v. Boyle*, 17 Pick. 78; *Squier v. Gould*, 17 Wend. 159. (6) Plaintiffs' third instruction is particularly objectionable, as it tells the jury in estimating the damages to take into consideration Mrs. Blair's age and *situation.* Nothing is said in the petition about her situation, whatever the term may mean, and if it meant her situation in a business point of view, which would be the only situation entitling her to damages, the instruction was erroneous under the pleadings. (7) The first count of the petition did not state facts sufficient to constitute a cause of action against defendant in equity. The plaintiffs had an adequate remedy

at law to set the release aside under the facts alleged in the first count. The mere statement that plaintiff was *fraudulently* induced to execute the release, without stating the facts constituting the fraud, will not confer jurisdiction upon a court of equity. By the course pursued, defendant was deprived of its constitutional right to have the validity of the release submitted to a jury. Bliss on Code Pleading, sec. 211 ; *Railroad Co. v. Welch*, 52 Ill. 183 ; *Bussian v. Railway Co.*, 56 Wis. 325, 333 ; *Railroad Co. v. Shay*, 82 Pa. St. 198; *Archer v. Railroad Co.*, 102 Ill. 493.

*Edwards & Ramsey* and *L. H. Waters* for respondent.

(1) The court properly overruled defendant's motion for a continuance. *State v. Fox*, 79 Mo. 109 ; R. S. 1879, sec. 3595 ; *State- v. Lange*, 59 Mo. 418. There was no pretence of diligence on defendant's part. *Wood v. Railroad*, 58 Mo. 109 ; *Barber v. Patchin*, 56 Mo. 241. (2) The court committed no error in allowing non-medical attendants to testify to expressions of Mrs. Blair as to her condition. The usual expressions of bodily or mental pain made at the time are original evidence. 1 Greenl. on Evid., sec. 102 ; *Brown v. Railroad*, 66 Mo. 599 ; *Gray v. McLaughlin*, 26 Ia. 279. Proof that the injured party complained all the time, since the injury, is admissible. *Brown v. Railroad*, 32 N. Y. 597; *Matteson v. Railroad*, 35 N. Y. 487 ; *Quaife v. Railroad*, 48 Wis. 513 ; *Railroad v. Call*, 53 Pa. St. 402 ; *King v. Foster*, 6 Cav. & P. 325 ; *Towle v. Blake*, 48 N. H. 92. (3) The plaintiff had a right to waive the protection of the statute, and to call upon her physicians to testify as to her injuries, and their effects or consequents. *Railroad v. Martin*, 41 Mich. 742 ; *Frazer v. Jennison*, 42 Mich. 206 ; *Grattan v. Ins. Co.*, 80 N. Y. 281 ; *Johnson v. Johnson*, 14 Wend.

637; *Pierson v. People*, 79 N. Y. 424; *Lenz v. Ins. Co.*, 8 Mo. App. 363. In *Gartside v. Insurance Company*, 76 Mo. 446, the only question before the court, or passed upon, was whether the statute embraced such information as the physician acquired "by signs or observation." The physicians were called to testify against the interests of their patients in that case, and it was held they could not testify as to any information. (4) The court did not err in refusing to sustain the demurrer to the evidence because plaintiffs failed to prove that they had paid into court the thirty dollars ordered by the decree cancelling the release. (5) The court properly refused defendant's tenth instruction. Mrs. Blair was in that delicate situation in which "women who love their lords delight to be."

SHERWOOD, J.—Action for personal injuries suffered by Mrs. Blair in consequence of the car, on which she was a passenger, colliding with another car of defendant, carelessly left standing on a side track.

The petition contains two counts, the first seeking to have cancelled and held for naught a certain release excuted by the wife, as follows:

"MEXICO, Mo., Sept. 24, 1879.

"Received of the Chicago & Alton Railroad company the sum of thirty dollars, in full settlement and satisfaction for all damages by me sustained by reason of personal injuries, loss of time, and expense, and every other damage resulting from the accident at Larabee, on the night of September 23, 1879; and in consideration thereof I hereby release said company from all liability on account of such accident and damage resulting therefrom.

"[Signed.] MRS. JOHN BLAIR."

The grounds on which the release were sought to be

cancelled were, that Mrs. Blair was fraudulently induced to execute the release; that her mind was in such condition at the time of its execution, owing to the injuries received and the medicines given her, immediately after reception of the injuries, as not to be in condition to understand her rights, nor the nature and effect of the transaction; that her husband was not present and did not join in the release.

Afterwards, when the evidence was introduced and closed, and the arguments of counsel heard, the court permitted the following amendment to be made to the petition: "And plaintiffs aver that the physicians in the employ of the defendant company were sent by said company, and did attend upon and care for said Mary J. Blair, and became her attendant physicians and medical advisers, and that said physicians were paid for their attendance upon her by said defendant company; and that while said physicians, while so attending upon her, assured her that she was not seriously injured or hurt, and that said Mary J. Blair, after such assurances by the said physicians, and utterly ignorant of her rights in the case, and of the extent or character of the injuries she had received as aforesaid, and without sufficient mind or understanding to comprehend or understand the nature or character of said pretended transaction and settlement, said Mary J. Blair took said money and signed said pretended release. And plaintiffs aver that the only matter considered by the agents of said defendant company, or that in any manner entered into said pretended settlement, was six days loss of time at five dollars per day, and that no other matter or thing was considered by any one present at said pretended settlement."

The answer to this count was tantamount to a general denial, accompanied by a refusal of the tender of the thirty dollars made by plaintiffs in their petition.

The second count in the petition was an action at

law claiming damages in the sum of ten thousand dol·
lars for the injuries aforesaid.    The answer to this count
was also a general denial, accompanied by a plea in bar
setting up the release.    The reply to this was a reitera·
tion of the allegations of the original petition as to the
non-binding force of the release.

The petition was filed in January, 1880, and the
equity branch of the cause heard at the June term, 1881,
when the prayer of the petition was granted, and a de-
cree entered, cancelling and holding for naught the
release, and ordering that plaintiffs deposit with the
clerk of the court thirty dollars for the benefit of the
defendant.    The action of the court on that branch of
the cause will first be considered.

I.    I have no doubt but that Mrs. Blair had full
power to execute, in her own name, the release in ques-
tion, or that there was no manner of necessity of joining
her husband with her in its execution in order to its
validity.    My authority for saying so is based on section
3296, of the Married Woman's Act, which is as follows :
"Any personal property, including rights in action, be-
longing to any woman at her marriage, or which may
have come to her during coverture by gift, bequest, or
inheritance, or by purchase with her separate money or
means, or be due as the wages of her separate labor,
or have grown out of any violation of her personal
rights, shall, together with all income, increase and
profits thereof, be and remain her separate property, and
under her sole control, and shall not be liable to be
taken by any process of law for the debts of her hus-
band.    This section shall not affect the title of any
husband to any personal property reduced to his posses-
sion with the express assent of his wife ; provided, that
said personal property shall not be deemed to have been
reduced to possession by the husband by use, occupancy,
care or protection thereof, but the same shall remain her
separate property, unless by the terms of said assent, in

writing, full authority shall have been given by the wife to the husband, to sell, incumber, or otherwise dispose of the same for his own use and benefit," etc. This section in the clearest possible terms, as to the property mentioned in it, makes a *femme covert* a *femme sole*, and by reason thereof clothes her with all the incidents of separate ownership, to-wit: The free and unfettered *jus disponendi* of that property in whatsoever way she may deem fit, so that even her husband, though she is bone of his bone, and flesh of his flesh, cannot say her nay. More than that, the husband cannot reduce that property into his possession, nor sell, incumber, or otherwise dispose of the same, except by the express assent of the wife manifested in writing. *Rogers v. Bank*, 69 Mo. 560. The only difference between this statutory separate estate and that cognizable by a court of equity is the restrictive clause just mentioned; for under the rulings of courts of equity the husband might, by the tacit assent of the wife, reduce into his possession and sell, or make his own, her personal property held to her sole use. If the words of the statute do not, by necessary and inevitable implication, confer upon the wife the right of disposing of the property referred to, then the words employed therein—"her separate property and under her sole control"—constitute, so far as any disposition of that is concerned, a mere barren formula, an empty collocation of meaningless words, a legal solecism in terms, which in one breath confer sole and separate ownership, and in the next, negative one of the most usual functions of ownership, to-wit, the right of disposition; which admit the principal but forbid the incident; which grant the major premise and the minor premise, but deny the conclusion; which, in short, assert the following anomalous syllogism: Every owner of property who has the sole control thereof, may dispose of the same. Under section 3296, a married woman is the owner of property, and has the sole control

thereof. Therefore, she cannot dispose of the same. I am of the opinion that the statute under consideration will bear no such remarkable and distorted construction, at war as it is with its most obvious language, spirit, intent, purport and meaning. In this view I am fully sustained by the following authorities: *Kimm v. Weippert*, 45 Mo. 532, and cas. cit.; *Siemers v. Kleeburg*, 56 Mo. 196; *De Baum v. Van Wagoner, Ib.* ·347; *Schaforth v. Ambs*, 46 Mo. 114; *Whitesides v. Cannon*, 23 Mo. 457; *Lincoln v. Rowe*, 51 Mo. 571; *Morrison v. Thistle*, 67 Mo. 596; *McQuie v. Peay*, 58 Mo. 56; 2 Story's Eq. Jur., secs. 1390, 1393; and by the recent case of *Daily v. Singer Manufacturing Company*, 88 Mo. 301; Reeves Dem. Rel., pp. 236-7. Holding this view, the joining of the husband in the execution of the release was non-essential, and the release being valid, it was necessary that its bar be removed by appropriate procedure in order to the successful prosecution of the action at law.

II. And equity has jurisdiction in such cases where there has been fraud, or where there has been mistake of such a character as ·shows that there was no *aggregatio mentium*. "Where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met, or where an unconscionable advantage has been gained by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff * * * equity will interfere, in its discretion, in order to prevent intolerable injustice. This we believe to be the clearly defined and well established· rule upon the subject in the courts of equity, both in England and America." 1 Story's Eq. Jur. [Redf. Ed.] sec. 138*i*. Instances are frequent in the books where agreements and conveyances are decreed to be given up on the ground of surprise, neither party understanding the effect of them; or on the ground of mistake or surprise; or on the ground of having been obtained and executed improvidently without time for proper reflec-

tion ; or where parties contract on the basis of the existence of certain facts, and such facts do not exist. *Willan v. Willan*, 16 Ves. 82 ; *Tyson v. Tyson*, 31 Md. 134 ; *Evans v. Llewellin*, 1 Cox, 333 ; 1 Story's Eq. Jur., sec. 142.

III. And there can be no doubt that there was evidence justifying the conclusion which the circuit court reached, that mistake and misapprehension existed on the part of Mrs. Blair when she signed the release ; she evidently did not think that she was seriously injured, nor did defendant's agents, or if they did, their conduct smacks of fraud in inducing her to sign a paper relinquishing rights not in contemplation of the parties at the time. It is most evident that the only compensation she received was for her loss of time, a paltry sum, and yet the release recites and embraces full satisfaction for all damages for personal injuries, loss of time, and expense resulting from the accident. The doctrine is firmly rooted in equity that when an instrument is so general in its terms as to release the rights of a party of which he was ignorant, and which were not in contemplation of the bargain at the time it was made, the instrument will be restrained to the purposes of the bargain, and the release confined to the right intended to be released. 1 Story's Eq. Jur., sec. 145 ; *Ramsden v. Hylton*, 2 Ves. Sr. 304 ; *Pomeroy v. Benton*, 57 Mo. 531 ; 3 Jones [N. C.] 456. To the same effect see *Russell v. Church*, 65 Pa. St. 9 ; *Lyall v. Edwards*, 6 H. & N. 337.

IV. And it is no barrier to a court of equity proceeding to grant relief in a cause, even if there be an adequate remedy at law, if the defendant does not plead remedy at law, for in such case the court will go forward and afford relief in any cause of action, legal or equitable. *Underhill v. Van Courtland*, 2 Johns. Chy. 369 ; *Livingston v. Livingston*, 4 Johns. Chy. 290 ; *Burrough v. McNeil*, 2 Dev. & Bat. Eq. 300 ; 1 Daniel's

Chy. Pl. & Prac., sec. 555; *Stockley v. Rowley*, 2 Head [Tenn.] 493.

V.   Now, as to the sufficiency of the petition. The statute authorizes a joinder of causes of action whether they have heretofore been denominated legal or equitable, or both, when they arise out of the same transaction, connected with the same subject of action, provided they be separately stated, etc. Section 3512; *Henderson v. Dickey*, 50 Mo. 161. The petition complies with the statute in this regard, but even if it did not, it was too late to take advantage of the misjoinder by motion in arrest. Advantage of such defects must be taken by demurrer. Sec. 3515; *Kellogg v. Malin*, 62 Mo. 429. Besides, section 3519 makes express provision that if such advantage be not taken the defendant shall be deemed to have waived the same. And the cause of action as to the fraud, even though defectively stated, was sufficient after finding and decree; but judging from the amendment made, plaintiffs seem to have relied more on that than they did upon the other allegations of the petition, and this amendment set forth abundant reason for equitable interposition, and the court, in conformity to the statute, had ample authority to allow the amendment to be made at the time it was made. R. S., sec. 3567; *Bennett v. McCanse*, 65 Mo. 194, and cas. cit. As the substance of the evidence will accompany this opinion, it is deemed unnecessary to encumber the opinion with it. As already indicated, it fully supported the finding and decree, and on this branch of the case I find no error.

VI.   I am thus brought to consider the incidents and results of the trial on the second count in the petition, the action at law for damages. This trial occurred on the fifteenth day of October, 1881, at the next term after the decree had been entered as already announced. On the fourteenth day of October an application for a continuance was made in behalf of defendant. This

was on the day next preceding the trial. This application was properly refused for this reason : It is disclosed therein that on the twelfth and thirteenth days of October, next before the trial, defendant ascertained for the first time, that one of its own witnesses, Miss Sallie Holmes, was absent, that certain material facts could be proved by the absent witness, etc. This application shows no diligence. It is the duty of a party long before the trial to prepare for the same—to ascertain what facts are within the knowledge of his own witnesses. If this inquiry had been made, defendant would have been in possession of such facts as would have been the basis for obtaining the desired testimony, or for making such a show of diligence by efforts to have obtained the attendance of the witnesses as would have warranted a continuance to be granted. Every intendment is in favor of the correctness of the action of the trial court in denying such application. *Leabo v. Goode*, 67 Mo. 126 ; *Bartholow v. Campbell*, 56 Mo. 117. And unless it plainly appear that in the particular instance the judicial discretion has been unsoundly exercised, no reversible error has been committed. *State v. Klinger*, 43 Mo. 127 ; *King v. Pearce*, 40 Mo. 223.

VII. Relative to the payment of the thirty dollars to the clerk for the benefit of the defendant, it suffices to say that this had been ordered by the court at a prior term to be done ; and the presumption which invariably attends the acts and doings of courts of general jurisdiction, impels the belief that this condition had been complied with before the trial on the second count began. Any other conclusion, seeing that the record is silent on the subject, would be contrary to one of the most familiar intendments of the law, that the superior courts proceed by right and not by wrong. While it is true that a party plaintiff must, in circumstances such as these, before he can maintain his action, restore whatever of value he may have received, place the defendant

*in statu quo ;* yet, this principle, well established as it is, by no means contravenes or gainsays the indulgence of the presumption already announced. Indeed, it is utterly inconceivable that the trial court would have given the fourth instruction on behalf of plaintiffs, requiring the jury to disregard the settlement in the answer, because it had been set aside, unless the order of the court for the deposit of the money with the clerk had been complied with. The instruction in the nature of a demurrer to evidence on this score was, therefore, properly denied.

VIII.   In respect of the admission of the testimony of Dr. Dunn and other physicians, it is sufficient to say that this court has recently decided that a party in such circumstances can waive the protection of the statute, and thus waiving it, the seal of secrecy set upon the lips of the physician will be removed. This appears to be the rule elsewhere announced. *Grattan v. Insurance Co.*, 80 N. Y. 281 ; *Peirson v. People*, 79 N. Y. 424 ; *Railroad v. Martin*, 41 Mich. 667 ; *Johnson v. Johnson,* 14 Wend. 637.

IX.   The instructions, speaking generally, presented the issue involved very fairly to the jury. It is, however, insisted that the tenth instruction asked for defendant should have been given. There was no claim in the petition for loss of time, or from any loss resulting from the wife's inability to attend to business. There was no call, therefore, to instruct the jury on matters not in issue. Besides, the court in the third instruction, given at the instance of plaintiffs, had instructed the jury what they should consider in making up their verdict, and this was all that was required. Criticism has been indulged in as to the use of the word "situation" in that instruction, but nothing objectionable is discovered in it. It was right that the jury, in estimating the damages resulting to Mrs. Blair, should consider every

fact in the case which would tend to increase the amount of her pain or the extent of her injuries.

Finding no error, the judgment should be affirmed. All concur.