GLOVER v. MANILA GOLD MIN. & MILLING CO. *et al.*

1. A complaint in an action by a stockholder of a mining corporation, for himself and all others similarly situated who may chose to unite with him, against it and the officers and directors thereof, alleging that such officers and directors, in pursuance of their plan to unlawfully and fraudulently depreciate the company's stock, in order to render practically worthless stock held by plaintiff and others similarly situated, refused to dispose of treasury stock held for the purpose of acquiring funds with which to prosecute assessment work on the company's mining claims, essential to compliace with the federal and state laws, refused to do such work, systematically depreciated the value of the treasury stock, refused to receive money therefor, removed the company's books from the state, refused plaintiff any information regarding the company's affairs, and so conducted its business as to destroy the value of the shares in order that they might relocate the property in the name of other parties, and thereby deprive plaintiff of his stock or render it practically worthless, to the company's damage in a certain sum, and praying judgment therefor, for an accounting, and for an injunction restraining defendants from further unlawful acts, etc., states but one cause of action.

2. The complaint alleging that by defendants' fraudulent conduct the value of the stock had been greatly depreciated in value, to the company's damage in the sum of $50,000, a demand for judgment in that sum and for other relief was not a demand by plaintiff for judgment personally.

3. Code Civ. Proc. § 144, provides that the plaintiff may unite in the same complaint several causes of action, whether they be such as have heretofore been denominated legal or equitable, or both, where they arise out of "(1) the same transaction, or transactions connected with the same subject of action." Held, that conceding that two or more causes of action, separately stated, were set out in the complaint, they were not improperly united.

4. The acts constituting fraud on the part of defendant directors were sufficiently specifically set out.

5. Stockholders of a corporation may bring an action on its behalf against its directors, who by their fraudulent management and conduct of its

business, fraudulently and intentionally depreciate the stockholders' interests, and in effect deprive them of their property.

6. The corporation was entitled, through plaintiff, to relief, as against the directors named, for an accounting, and an injunction restraining them from further acts in pursuance of their unlawful conspiracy.

7. As, under the federal and state law, failure to do the necessary assessment work on the company's mining claims within the year would subject the same to relocation by other parties, and the complaint further alleging that insolvency of the company was imminent, and the entire loss of its property likely to result from the directors' fraudulent acts, the appointment of a receiver to protect the property was proper.

(Opinion filed July 6, 1905.)

Appeal from Lawrence county court; Hon. W. G. RICE, judge.

Action by George W. Glover against the Manila Gold Mining & Milling Company, a corporation, and others. From an order overruling their demurrer to the complaint, defendants appeal. Affirmed.

*A. J. Plowman* and *S. C. Polley,* for appelants.

*G. G. Bennett, W. F. Dutton,* and *Chambers Kellar,* for respondent.

CORSON, P. J.   This is an appeal by the defendants from the order overruling defendants' demurrer to the complaint. The complaint is quite lengthy, and we shall only give the substance of the same. The plaintiff, for himself and all others similarly situated who may choose to unite with him, alleges that the Manila Gold Mining & Milling Company is a corporation duly incorporated and organized under the laws of this state, transacting business in the county of Lawrence; that said defendants C. M. and F. H. Woodbridge and I. A. Webb are directors in said mining company, the said C. M. Wood-

bridge being president, F. H. Woodbridge being secretary, and I. A. Webb superintendent thereof; that the capital stock of said mining company is $1,500,000, divided in 1,500,000 shares, of the par value of $1 per share; that 750,000 shares of said stock have been placed in the treasury of said company to be sold and disposed of for the purpose of raising funds with which to develop the same, for the purpose of purchasing other property and patenting the same, and making such improvements as might be deemed necessary and expedient; that the plaintiff and said C. M. and F. H. Woodbridge and I. A. Webb are owners of an equal amount of the stock of the said company, being 175,000 shares each; that the defendants C. M. and F. H. Woodbridge and I. A. Webb, have had and still have and exercise entire control and supervision of the business of the said corporation, being the majority of the board of directors, which, under the by-laws of such company constitute a quorum for the transaction of business, of said corporation; that said corporation is the owner of a portion absolute, and the remainder held in trust for said company, of 31 mining claims situated in the Germania mining district, in said county, and fully described in the complaint, and that the said mining company has now and has been for some time past the owner and in the quiet and peaceable control and possession of all of the above described mining ground; that prior to the year 1903 a large amount of work had been done and performed on said ground, disclosing valuable mineral deposits therein, proving said ground to be of great value, but that for the year 1903 only about $500 worth of work had been done altogether on said claims, which is not sufficient to constitute the annual representation work to hold said claims under the

laws of the United States and the state of South Dakota; that unless the remainder of the representation work is done on or before the 1st day of January, 1904, or steps taken for the protection of said property, it will become subject and liable to relocation as abandoned ground, and thereby will be lost to said company and its stockholders; that the said C. M. Woodbridge, F. H. Woodbridge, and I. A. Webb, directors and officers as aforesaid of said corporation, and exercising full control and management of the same, have unlawfully and fraudulently conspired, colluded, and attempted, and are now unlawfully and fraudulently conspiring, to manipulate and manage the business of said corporation so as to depreciate the value of its property, and render, if possible, worthless the stock held therein and owned by this plaintiff; that said directors and officers have made no attempt to dispose of the treasury stock, or any portion thereof, for months past, by which to raise the necessary funds to do the annual assessment work on said claims; that plaintiff is advised by the treasurer of said corporation that there are no funds in the treasury, and plaintiff has reason to believe and does believe that the said defendant directors intend and propose to allow said mining claims to become subject to relocation, and have the same located in the name of a friend or friends of theirs, whereby the stock and interest of this plaintiff held in said corporation shall be rendered absolutely of no value; that said defendant directors have not only failed and neglected to sell and dispose of any treasury stock for the purpose of doing and performing any of said representation work, but they have also refused to sell or issue shares to a purchaser who had given his note for the same; and made partial payments thereon, and tendered the

balance due on the issuance and delivery of said stock; that the development work on the Manilia Gold Mining & Milling Company's property was discontinued more than one year ago by order of said directors, who have since said time pursued a systematic course for depreciating the property and stock of the said Manila Corporation; with the intent and purpose of defrauding this plaintiff, refusing to sell any treasury stock therefor or to continue development work, and have refused to do and continue to refuse to do even surface work sufficient to hold said claims for the year 1903 unless this plaintiff contributes $500 out of his private resources, or consents to sell his stock at a nominal sum; that said property can be safely and economically developed and assessment work thereon fully done in the shaft already commenced on said property, sunk to a depth of 119 feet when ordered by said board to be closed down, more than one year ago; that at all times since the 18th day of January, 1902, when the development work was closed down by said company through the action of said defendant directors, there has been an ample supply of tools, hoists, and machinery and buildings on said property in connection with said shaft, to continue development, and expose and block out the ore bodies, ready for breaking down and milling; that by the negligence, want of care, fraudulent conspiracy, and conduct of said defendant directors and officers, the value of the shares of stock of the Manila Company have been greatly depreciated, to the damage of said Manila Gold Mining & Milling Company in the sum of $50,000, no part of which has been paid, and, unless some immediate relief is granted, the said company's loss will be irreparable; that all the books and records of the corporation are no longer kept in this state, as

required by law, but have been removed therefrom, and out side the state entirely; that plaintiff can have no access thereto for the purpose of examination or ascertaining what is being done by said board in the management of the affairs of said company, and that no report of the financial condition of the corporation can be obtained by him from any of its officers, although he has repeatedly made requests for the same; that this plaintiff has no knowledge and no means of ascertaining the amount of treasury stock that may have been sold, or what use or disposition has been made of the proceeds arising from said sales, and that, as a stockholder of such corporation, he has a right to have, and does demand, an accounting from the officers of said company, showing the true condition of its business, sale of its treasury stock, and to what purpose the proceeds arising therefrom have been applied; that he has reason to believe and does believe that money and property belonging to the said Manila Corporation have been wrongfully and fraudulently diverted from the uses of said company, and removed and used and appropriated to the use and benefit of a corporation known as the Safe Investment Company, which corporation is owned almost entirely by the defendant directors, but of such transaction he has no means of ascertaining or of examining the books or records of said Manila Company, or of the property belonging thereto; that said Manila Mining & Milling Company is in imminent danger of insolvency, and, unless immediate relief is granted herein, its entire holdings of property will be lost to the company and to its stockholders. And plaintiff demands judgment (1) for $50,000 damages; (2) for an accounting by said defendant directors and officers of their doings and transactions in connection with the manage-

ment of the business affairs of the said corporation, including the sales of the treasury stock, disposition of funds arising therefrom, the indebtedness of said corporation, character and value of all personal property, and all such other items as may disclose the present condition and financial standing of said corporation; (3) for the appointment of a receiver to take charge and supervision of all the property of said company; (4) that said defendant directors and officers be enjoined from in any manner interfering with said property or disposing of or incumbering the same, or from transacting or attempting to transact any business pertaining to the corporate rights or privileges of said corporation, for his costs, and for such other and further relief as to the court may seem equitable and just.

To this complaint the defendant C. M. Woodbridge interposed a separate demurrer upon the following grounds: (1) That there is a defect of parties, both plaintiff and defendant; (2) that several causes of action have been improperly united; (3) that plaintiff's amended complaint does not state facts sufficient to constitute a cause of action. As before stated, the demurrer was overruled, and the defendant given leave to answer over if he elected so to do.

It is contended by the appellant in support of his demurer that there were several causes of action improperly united in the complaint; that three of the defendants are charged in the complaint with having fraudulently conspired and colluded together to so manipulate the affairs of the defendant compay as to depreciate and render the plaintiff's stock worthless; that the complaint contains nothing but conclusions of law, and does not state or purport to state a single act constituting conspiracy, collusion, or fraud of any kind, and that an allegation,

to charge one with fraud, must set out some act or conduct con-stituting the fraud; and that, if this is not done, proof of the acts constituting the fraud is not admissible.

We are of the opinion that the appellant's contention that different causes of action have been improperly united is not tenable. In our view, the complaint contains but one cause of action, namely. that the defendants conspired together to un-lawfully and fraudulently depreciate the value of the Manila Company's stock in order to render the plaintiff's stock and the stock of other parties similarly situated prac-tically worthless, and that in order to accomplish this object the three directors named proceeded to do certain acts specifically set out in the complaint, which would necessarily produce results intended by the conspiracy. The plaintiff, in his complaint, proceeds to state the fraudulent acts of the defendants which tended to depreciate and which did depreci-ate the value of the company's stock, and that, by reason of such fraudulent acts on the part of the three defendants named, the Manilia Company was damaged in the sum of $50,000, in which it appears that the plaintiff had a one-eighth interest; and it is alleged that in carrying out that fraudulent purpose they have refused to dispose of the treasury stock, embracing one-half of the capital stock of the company, have systemati-cally depreciated its value, have refused to receive money for the treasury stock, have refused to do. the necessary assess-ment work upon the property in order to comply with the laws of the United States and this state, have removed the books of the corporation out of the state, have refused the plaintiff any information in regard to the affairs of the company, and in short have proceeded to so conduct the business of the corpor-

ation as to destroy the value of the shares, in order that they may be enabled to relocate the property in the name of other parties, and thereby deprive the plaintiff of his stock, or render it practically worthless. If these allegations are true—and for the purpose of the demurrer they must be assumed to be true—then these defendants are guilty of gross mismanagement of the company's affairs for the purpose of depreciating the value of the plaintiff's interest therein. It is quite clear that under the allegations of the complaint the plaintiff has stated but one cause of action, and that the various fraudulent acts of the defendants set out in the complaint were intended as statements of acts done by them in carrying out their fraudulent conspiracy to depreciate the value of the company's property and render it comparatively worthless, in order to carry into effect their fraudulent design to secure the property for themselves and their friends, and to deprive the plaintiff and other stockholders similarly situated of their interest therein.

The contention of the appellant that the plaintiff claims personally a judgment for $50,000 is untenable, as it will be observed that the plaintiff alleges that the $50,000 of damages have accrued to the defendant corporation, and not to himself personally. The action is in effect an action by the corporation, brought for the purpose of protecting the property of the corporation against the fraudulent and unlawful acts of its board of directors, and which could not be brought by the corporation for the reason that the directors, who were managing the affairs of the corporation, and whose duties it would ordinarily be to bring such an action to protect the interests of the corporation, are the parties who have conspired together to so

mismanage the affairs of the corporation as to destroy the value of its property, and in effect to render its stock worthless, and which would certainly result in depriving the plaintiff of his interest in the property. But assuming the claim of the appellants that there were two or more causes of action set out in the complaint, and that the same were separately stated to be true, their contention that they were improperly united would be clearly untenable under our present code system. Under our present code system, in an action in equity a claim for damages may be united with a claim for equitable relief. In Lamming v. Gulusha, 135 N. Y. 239, 31 N. E. 1024, the plaintiff instituted an action for an injunction restraining the unlawful maintenance and operation of a railroad in the street in front of his premises, by reason of its continuous interference with his rights of property, and united therewith a demand for equitable relief, a demand for damages because of such interference, and also a claim for personal injury suffered on a particular occasion from the same unlawful appropriation and use of the highway. The Court of Appeals of the state of New York held that such a complaint was proper, and in its opinion the court says: "But the question here is whether a plaintiff, having a cause of action which entitles him to an injunction restraining the maintenance and operation of the railroad by reason of its continuous interference with his rights of property, may unite with the demand for eqitable relief by injunction and for damages for such interference a claim for damages for a personal injury suffered on a particular occasion from the same wrongful appropriation and use of the highway, or, in other words, whether he may unite in a single action all his claims, legal and equitable, which arise in consequence of

the same general cause, viz., the nuisance maintained by the defendant. This is a question of procedure, governed by the course and practice of the court, or by the statute, if made the subject of statute regulation. We are of the opinion that the causes of action were properly united, under section 484 of the Code of Civil Procedure, which authorizes the plaintiff to unite in his complaint two or more causes of action, whether such as were formerly denominated legal or equitable, or both, in the cases specified, and among others; ''Subd. 9. Upon claims arising out of the same transaction or transactions connected with the same subject of action and not included within one of the foregoing subdivisions.' '' The provision of section 144 of Code of Civil Procedure of this state is practically, if not identically, the same as the section referred to by the Court of Appeals of New York in the above opinion. The section of our Code referred to provided as follows: ''The plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they all arise out of (1) the same transaction, or transactions connected with the same subject of action.'' It will be observed in the case above referred to that there was not only an action for an injunction and damages, but an action for personal injuries arising out of the same tranaction, and that these were held to be all properly united in the one action. And the view expressed in this opinion is sustained by the following cases: People v. Metropolitan Tel. Co., 31 Hun, 598; Akin v. Davis, 11 Kan. 580; Dawson Bank v. Harris, 84 N. C. 206: England v. Garner, 86 N. C. 366; Blake v. Von Tilborg, 21 Wis. 672; Blair v. Chicago Railroad, 89 Mo. 383, 1 S. W. 350; Jacob v. Lorenz, 98 Cal.

332, 33 Pac. 119; Bowen v. State, 121 Ind. 236, 23 N. E. 75. The contention of the appellants, therefore, that the demurrer should have been sustained on the ground of improper joinder of causes of action, is clearly untenable.

The right of stockholders to bring such an action is clearly sustained by the decision of this court in the case of Loftus v. Farmers' Shipping Ass'n, 8 S. D. 201, 65 N. W. 1076, in which this court held that stockholders of a corporation may bring an action on behalf of the corporation against its directors, who by their fraudulent management and conduct of the business of the corporation are fraudulently and intentionally so conducting the business of the same as to depreciate the value of the stockholders' interest therein, and in effect deprive them of their property.

The contention of the appellant that the acts constituting fraud on the part of the three directors named as defendants are not specifically set out in the complaint is also untenable. It will be observed that the complaint has stated very fully the various acts done and being done by the said defendants in carrying out their conspiracy, and, if true as alleged, clearly show that these defendants are violating their trust as officers of the corporations, and that their mismanagement of the affairs of the corporation would necessarily result in destroying the value of the property of the corportation, and, as before stated, practically deprive the plaintiff of his property therein.

Our conclusion, therefore, is that the corporation was entitled, through the plaintiff to relief as against the directors named, for an accounting, and an injunction restraining them from the commission of further acts in the pursuance of their unlawful

conspiracy, and for a receiver to protect the interests of the corporation and prevent the forfeiture of its property under the laws of the United States and this state, and preserve the corporation, as far as possible, from the further depreciation of the value of its property, and to prevent, if possible, its actual insolvency. In the case of Dudley et al. v. Dakota Hot Springs Co. et al, 11 S. D. 564, 79 N. W. 1127, this court held that under the allegations of the complaint in that case a receiver could not be appointed. But no insolvency or threatened insolvency was therein alleged. But where, as in the case at bar, the allegations of the complaint show that insolvency is imminent, and the entire loss of the property of the corporation is likely to result from the illegal acts of the directors, the appointment of a receiver would be proper, to protect the corporate property. As will be noticed, in the case at bar it is alleged that the directors have failed to do the necessary assessment work upon the mining claims to comply with the requirements of the law of the United States and of this state, and the law declares that in case of such failure the mining claims will be subject to relocation by other parties if such assessment work is not performed within the year; and the necessity for a receiver in such an action, to protect the interests of the corporation, is clearly apparent. Whether or not the plaintiff, acting for and in behalf of the corporation, would be entitled to recover damages sustained by such corporation by reason of the fraudulent and illegal acts of the defendants it is not now necessary to determine.

We are of the opinion that the court was right in overruling the demurrer, and the order overruling the same is affirmed.