Girard v. St. Louis Car Wheel Co.

## GIRARD v. ST. LOUIS CAR WHEEL COMPANY, *Appellant.*

### In Banc, June 19, 1894.

1. **Negligence**: PERSONAL INJURIES: RELEASE: FRAUD: PLEADING. In an action for damages for personal injuries defendant, by answer, set up an alleged agreement in the nature of a release or discharge of the cause of action. To that plea, plaintiff replied that the agreement had been obtained by fraud, while he was unable (because of pain and suffering, caused by the injuries) to comprehend his act in signing it, and that he never assented to the agreement; *held*, that the reply to the plea of a release was sufficient in an action at law, without resorting to equity to cancel that document. (GANTT, SHERWOOD and BURGESS, JJ., *dissenting.*)

2. ———: ———: ———: ———: RESTITUTION. Where a reply of fraud is made to a plea of release, and no point is interposed in the trial court of any deficiency in the reply on account of an omission to tender back the benefits received under the agreement for a release, and the record shows that those benefits were accounted for in the judgment, there is no prejudicial error in the omission to allege or prove an offer to return those benefits, even if such offer were otherwise necessary to avoid the release.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*W. E. Fisse* and *Lee & Ellis* for appellant.

(1) The replication of fraud against a plea of release is proper only in a case where the release is pleaded in a plea of *puis darrein continuance.* 1 Chitty on Pleading [16 Am. Ed.], p. 608; Pomeroy,

Rem. and Rem. Rights, sec. 650; 3 Blackstone's Com., 316; Stephen on Pleading [Tyler's Ed.], p. 97; 18 Am. and Eng. Encyclopedia of Law, 517; *Wade v. Emerson*, 17 Mo. 267; Buller's Nisi Prius [7 Ed.], 1817; *Wild v. Williams*, 6 Mees. & Welsby, 490; *Crook v. Stephens*, 5 Bing. (N. C.), 688; *Phillips v. Claggett*, 11 M. & W. 84; *Legh v. Legh*, 1 B. & P. 447. (2) The proceeding in this case is not only not according to the course of the common law, but is not in accordance with modern procedure. Pomeroy on Rem. and Rem. Rights [2 Ed.], sec. 90; *Henderson v. Dickey*, 50 Mo. 161. (3) The right to a jury trial being dependent, according to the statute, on the nature of the relief sought by the plaintiff in his petition, it follows that this right is not abridged by the nature of the defense interposed by the defendant. *Wolff v. Schaefer* 4 Mo. App. 367; s. c., 74 Mo. 154. (4) In the opinion under review, another fundamental principle of law is violated in order to sustain the judgment in favor of the plaintiff. It is this: That to the exercise of a right to renounce or rescind a contract, it is requisite that the party asserting such right shall surrender to the other all the advantage or benefit that he has received from him under and pursuant to the agreement. That such is the rule of law does not admit of question. See dissenting opinion of BIGGS, J., and cases cited. 46 Mo. App. 116. This rule has often been announced and applied in the decisions of the courts of this state. *Cahn v. Reid*, 18 Mo. App. 115; *Downing v. Stone*, 47 Mo. App. 144; *Bibb v. Means*, 61 Mo. 284; *Estes v. Reynolds*, 75 Mo. 563; *Clough v. Holden*, 21 S. W. Rep. 1071; *Taylor v. Short*, 107 Mo. 384. (5) And it is no less certainly established by the decisions in other states. *Jeffers v. Forbes*, 28 Kan. 174; *Kinne v. Webb*, 49 Fed. Rep. 512; *Brown v. Norman*, 65 Miss. 369; *Sanborn v. Osgood*, 16 N. H. 112; *McMa-*

*hon v. Plummer*, 50 N. W. Rep. 480; *Regensburg v. Notestine*, 27 N. E. Rep. 108; *Brown v. Ins. Co.* 117 Mass. 479; *Potter v. Ins. Co.*, 63 Me. 440; *Ins. Co. v. McRichards*, 121 Ind. 121; *Dillman v. Nadlehoffer*, 7 N. E. Rep. (Ill.), 88. (6) The text books are unanimous in this statement of the rule. 2 Pomeroy Eq., sec. 910; 1 Bigelow on Fraud, pp. 75, 77; Bishop on Contracts, secs. 679, 833; Leake on Contracts, p. 395; 2 Parsons on Contracts, p. 679; Maxwell, Code Pleading, pp. 193, 431; 5 Lawson, Rights and Rem., sec. 2579; 21 Am. and Eng. Encyclopedia of Law, p. 84, and cases cited in notes. (7) Cases like the present, therefore, seem to be regarded in some quarters as proper exceptions to the general rule. The following is a list of the cases (it is believed to be complete) where, in their judgments the courts have treated circumstances similar to those here present as justifying an exception to this general rule. *Railroad v. Welch*, 52 Ill. 183; *Railroad v. Lewis*, 109 Ill. 120; *O'Neil v. Iron Co.*, 63 Mich. 690; *Schultz v. Railroad*, 44 Wis. 638; *Bussian v. Railroad*, 56 Wis. 325; *Lusted v. Railroad*, 71 Wis. 391; *Sobieski v. Railroad*, 41 Minn. 169; *Railroad v. Doyle*, 18 Kan. 58; *Addystone v. Copple*, 22 S. W. Rep. (Ky.), 323; *Railroad v. Brazzil*, 78 Tex. 314; *O'Brien v. Railroad*, 57 N. W. Rep. (Iowa) 425. (8) It is submitted further that the evidence adduced at the trial altogether failed to establish plaintiff's allegation that the release was obtained from him wrongfully and when he was incapable of comprehending its nature and effect.

*A. R. Taylor* for respondent.

(1) The inference drawn by counsel from Chitty's failure "to cite any precedent or authority of his own period" in support of his replication of fraud to a plea

Girard v. St. Louis Car Wheel Co.

of release, if correct, is of no consequence, because prior to the adoption of the Hilary Rules, which was subsequent to the publication of Chitty's work, fraud in any sealed instrument could be shown under the plea or replication *non est factum.* 1 Tidd's Practice, *650; 2 Wils. 341; Lofft, 457; 2 Greenleaf's Evidence [14 Ed.], secs. 246–300. (2) Although fraud was one of the original heads of equity jurisdiction, yet in modern times this jurisdiction of courts of chancery has not been exclusive. Blackstone, after observing that fraud, accident and trust were said to be proper and peculiar objects of a court of equity, continues: "But every kind of fraud is equally cognizable in a court of law, and some frauds are cognizable only there, as fraud in obtaining a devise of lands." 3 Black. Com. *431. And in *Bright v. Eynon,* 1 Burr. 396, Lord Mansfield says: "Courts of equity and courts of law have a concurrent jurisdiction to suppress and relieve against fraud." (3) Lord Loughborough said in *Balis v. Graves,* 2 Ves. Jr. 295: "Where the court of chancery has decreed a deed to be set aside for fraud and imposition, I must suppose that it would be equally set aside at law, upon pleading it. For courts of law relieve by making void the instrument obtained by fraud." That this is true where the defendant pleads fraud as a defense to an action on the contract is universally admitted. In such cases it has never been necessary for the defendant to have recourse to a proceeding in equity to rescind the contract. If the case was such as would justify a rescission in equity for fraud, the fraud was equally available as a defense in an action at law on the contract. The decisions of this court, before as well as since the adoption of the code system of pleadings, are in harmony with this proposition. *Montgomery v. Tipton,* 1 Mo. 318; *Pemberton v. Staples,* 6 Mo. 59; *Edgell v. Sigerson,* 20 Mo. 494; *Briggs v.*

*Ewart,* 51 Mo. 245; *Martin v. Smylee,* 55 Mo. 577; *Corby v. Weddle,* 57 Mo. 452; *Wright v. McPike,* 70 Mo. 175; *Cole v. Wiedmair,* 19 Mo. App. 7. (4) The authorities above cited clearly show it to have been the rule in England at common law; and it has been held to be the law in a number of states in which the common law system of pleading still prevails. *Hoit v. Holcomb,* 23 N. H. 535; *Larrabee v. Sewell,* 66 Me. 376; *Curley v. Harris,* 11 Allen (Mass.) 121; *Mullen v. Railroad,* 127 Mass. 86; *O'Donnell v. Clinton,* 145 Mass. 461; *Railroad v. Welch,* 52 Ill. 187; *Railroad v. Lewis,* 109 Ill. 120. (5) In Michigan it is held that where the defendant in an action at law, introduces a release under the general issue, the plaintiff may avoid the bar by proving fraud in obtaining it. *O'Neil v. Iron Co.,* 63 Mich. 690; *Averill v. Wood,* 44 N. W. Rep. (Mich.) 381. (6) It is the established doctrine of this court that a defense of fraud to an action at law does not convert the action into an equitable one, but that that issue is to be tried by jury. *Kitchen v. Railroad,* 59 Mo. 514; *Earl v. Hart,* 89 Mo. 263. (7) It must follow that if the plaintiff in an action to recover money seeks to avoid the force of an anticipated defense for fraud, the entire issue would be triable by jury. In such case the burden of proving the fraud would be upon the plaintiff. If the fraud is set up by the reply, the burden of proof would still be upon the plaintiff—not upon the defendant, as appellant contends. 20 Am. and Eng. Encyclopedia of Law, title, Release, 767; *Railroad v. Brazzil,* 10 S. W. Rep. (Tex.) 403; *Pipe & Steel Co. v. Copple,* 22 S. W. Rep. (Ky.) 323. (8) In the following cases this method of raising the issue of fraud to a plea of release at law, has been allowed under systems of code pleading. *Peterson Railroad,* 36 Minn. 389; *Peterson v. Railroad,* 38 Minn. 511; *Sobieski v. Railroad,* 41 Minn. 169; *Railroad v.*

*Doyle*, 18 Kan. 58; *Pipe & Steel Co. v. Copple*, 22 S. W.
Rep. (Ky.)323; *Railroad v. Brazzil*, 78 Tex. 314. (9) The
issue being one at law, the issue as to the quantum of
evidence is to be tried precisely like other law cases.
(10) This rule has been impliedly approved in a
number of cases in which the plaintiffs were permitted
to recover without having returned what they had
received. *Railroad v. Crow*, 22 S. W. Rep. (Tex.) 928;
*Bean v. Railroad*, 107 N. C. 731; *Smith v. Steamship
Co.*, 34 Pac. Rep. (Cal.) 84; *Schultz v. Railroad*, 44 Wis.
638. The reply also alleges, and there was evidence
tending to prove, that at the time plaintiff signed the
release he was not of contracting mind and was unable,
through his bodily and mental condition, to comprehend
or understand the contents of said agreement and did
never assent to the terms thereof. The following cases
amply support said plea. Bishop on Contracts, secs.
956 and 640; *Railroad v. Lewis*, 109 Ill. 120; *Railroad
v. Crow*, 22 S. W. Rep. (Tex.) 928.

BARCLAY, J.—The petition states a case for dam-
ages on account of personal injuries suffered by plain-
tiff while in the employ of the defendant company.

It charges as the cause negligence in respect of the
operation of certain hoisting machinery, under the
direction of defendant's superintendent, at its shops in
St. Louis; and alleges that, in consequence of that
negligence (the particulars of which are not important
at this stage of the proceedings), a heavy timber fell
upon plaintiff, disabling him from labor, etc.

The answer denies the charge of negligence, and
sets up, as a bar to plaintiff's action, a written instru-
ment, signed by plaintiff and by one of defendant's
officers, in which (after reciting the fact of plaintiff's
injury) the following stipulations appear:

"The said Car Wheel Co., on their part, pro-

poses to furnish and pay for all the medical attendance, necessary for his recovery from said injuries sustained by said accident, and to keep his name on its pay roll at the uniform wages per day, for all working days, which he has been up to this time credited, and in any other way in their power assist in his recovery, until he is physically sufficiently recovered from said accident, evidenced by physician's certificate, to resume work.

"And that on his part, beyond the above obligation of the St. Louis Car Wheel Co., he relinquishes all other claims whatsoever as to them, and that he agrees to this deliberately, and of his own free will, and without any undue influence from any one.

"The said parties, in evidence of which and in good faith, sign this, the date first herein written."

Defendant alleged compliance with the above agreement, so far as plaintiff had permitted such compliance, and prayed judgment.

Plaintiff, by a reply, charged that the said agreement had been obtained from him by gross fraud and misrepresentations of defendant and its agents; that, at the time it was made, he was in the deepest distress and bodily pain, and was unable, through his bodily and mental condition, to understand or comprehend the contents of said agreement, and never did assent to the terms thereof.

These allegations of fraud and incapacity are repeated in several forms with considerable particularity of detail; but the above outline will be sufficient for present purposes.

The cause came to trial before Judge DILLON and a jury.

It is not necessary to go into the evidence as to the plaintiff's original right of recovery, since no point is made in this court on that branch of the case.

The only questions of any difficulty now submitted, concern the rules of law to be applied in view of the so-called release or settlement.

The plaintiff's testimony tended to prove that his injury occurred, September 13, 1889, and the agreement (which we will for convenience call a release) was signed the next day, about noon.

The timber which struck plaintiff was about eighteen feet long and six by nine inches thick. It hit him in the back. He was knocked to the ground, senseless. His arm was broken. Blood oozed from his forehead, and his face was scratched. He could not stand. He had to be carried away from the shop. He was put into an ambulance and taken to the city hospital. The next day he was removed to his boarding house.

He testified that he had no recollection of signing the release; that at that time he was unable to read or comprehend anything; if he attempted to read he could merely "see a gleam" in front of him; "that for four or five weeks he was not in his proper mind or able to understand things; that during the first week he did not easily recognize people who called on him."

He suffered intense pain, which did not begin to abate for two months. His face and jaws were badly swollen, his eyes, discolored and almost closed. He had a lump on the back of his head for some time after the mishap.

Six or eight days later he found a copy of the release on the floor of his room. He gave it to his attorney soon afterward, and then brought this action, in October, 1891.

Several of his fellow workmen, who called to see him on the day the release was signed and on the following day, gave various descriptions of his condition; for instance:

"He was excited and bewildered."

"His mind was not clear."

"He was more jovial than was usual with him."

"He did not seem rational."

"He didn't seem to me to act or talk at the time as I saw him do before."

The defendant's testimony contradicted that above quoted, and tended to prove that plaintiff understood the release, assented to its terms, executed it freely, and that no fraud was practiced upon him. Under the terms of the release, defendant employed a physician to treat plaintiff, at a cost of $50, until the time plaintiff discharged him, shortly before bringing this suit. The defendant further paid $10 to another physician who had been called to plaintiff's aid at the shop in the emergency when he was first injured.

Defendant also kept plaintiff's name on the pay roll, and was ready and willing to pay him wages according to the agreement in the release; but he would not, or did not, accept those wages.

The trial court submitted the issue of release upon instructions, under which the jury found that plaintiff signed that paper at the instance of defendant's agents without knowing its contents, and that he never did assent to its terms.

They also found that the release was signed when plaintiff was in such a mental condition that he could not comprehend its contents; and that defendant's agents took advantage of that condition to induce him to sign the paper without understanding it, intending thereby to defraud plaintiff of his cause of action set forth in the petition.

On that issue the court gave the following instructions at the instance of defendant, viz.:

"4. The jury are instructed, even though you should believe from the evidence the release pleaded by

defendant to have been unfair to the plaintiff and not a sufficient recompense for plaintiff's injuries, still, this will not relieve plaintiff from its force and effect as a bar to his recovery in this action. The only way in which plaintiff can affect the conclusiveness of this bar is to satisfy you by a preponderance of evidence that plaintiff, when he signed the release, had not sufficient mental power to know the nature of the instrument he was signing.''

"7. The court instructs the jury that the paper read in evidence, signed by the plaintiff and termed a release, is on its face a release and discharge of the cause of action sued on in this case. It is a presumption of law that the plaintiff understood and agreed to the terms and contents of said paper when he signed it, and the burden is on the plaintiff to show, by a preponderance of evidence, that he was not acquainted with the contents of the paper, and that he did not voluntarily agree to release his claim for damages growing out of his injury upon the terms stated in said petition, or that defendant fraudulently procured the execution thereof by him, and, unless the plaintiff has affirmatively so proved these facts to the satisfaction of the jury by a preponderance of proof, they should find for the defendant."

"12. The court instructs the jury that in determining the question whether the paper offered in evidence, and termed a release, was freely and voluntarily signed by the plaintiff, they are not at liberty to consider whether the terms of said release were reasonable, nor whether the undertakings of the defendant therein constituted a full and adequate compensation for his injury."

The bill of exceptions also shows that "the cause being submitted to the jury, they found a verdict in favor of plaintiff, such verdict being an award of dam-

ages in favor of plaintiff in the sum of $1,562, less the sum of $62, paid by the defendant under the terms of the release given in evidence, leaving the amount of damages $1,500."

The jury also found for the plaintiff on the issues of negligence, under appropriate instructions, which need not be examined, as this appeal does not call in question any rulings on that part of the case.

After the usual motions and exceptions, defendant appealed to the St. Louis court of appeals; but, as the judges of that court were divided in opinion ( *Girard v. St. Louis Car Wheel Co.*, 46 Mo. App. 81), the case was transferred to the supreme court under the provisions of the constitution (Const. Amendment, 1884, sec. 6).

1. Defendant's first proposition is that this action for damages is not maintainable, because the release has not been set aside by a decree in equity. In other words, it is claimed that the paper in question is a complete defense at law to the cause of action to which it relates, no matter how the paper may have been obtained. This position has been defended with much ability; but no resources of counsel are sufficient to conceal its inherent weakness.

The testimony for plaintiff tends strongly to prove that he was incapable of understanding the release when he signed it, and that he did not comprehend, or intend to assent to, its terms. The jury so found in response to instructions.

Those facts, when established, destroyed the substance of the agreement which the release in form expressed. They took from the apparent contract what was essential to its legal force and validity, namely, the element of assent by the plaintiff. That element is a necessary part of every contract.

Girard v. St. Louis Car Wheel Co.

Without it, a mere writing, expressing some formula of words, imposes no obligation.

The signature of plaintiff, obtained to such a paper, without the assent of his mind to the act, deprived him of no legal right. He might, indeed, affirm such a signature, or make it his lawful act by his subsequent conduct, the effect of which would be to give to the agreement that assent which was necessary to originate an obligation on his part. But in the absence of such acts as amounted to an approval of it, he might proceed to enforce his rights, irrespective of such a paper. *Brewster v. Brewster* (1875), 38 N. J. L. 119.

In circumstances such as are here exhibited, a writing, in the form of a release, which never acquired original validity as a contract for want of competent assent to its terms, may be disregarded by a court of law in the administration of justice, without the intervention of a court of equity.

The paper in question is, in contemplation of law, nothing more than the form of a contract; and on finding that the substance, which should give life to an obligation, is wanting, the court may cast aside the form and proceed to judgment, notwithstanding the fraud which may have brought the verisimilitude of an obligation into existence. *Hartshorn v. Day*, (1856), 19 How. 211. *Vandervelden v. Railroad*, (1894), 61 Fed. Rep. 54.

A court of law, upon ascertaining such a fraud, may properly pass over it to the conclusion which it considers just; thus, in effect, discarding the fraud as an obstacle to the exercise of its jurisdiction.

It is not thought necessary at this day, to further argue the correctness of this proposition.

It has been repeatedly asserted in earlier decisions in this state, both before and since the adoption of the

reformed code of procedure in 1849. *Burrows v. Alter* (1842), 7 Mo. 424; *Wright v. McPike* (1879), 70 Mo. 175.

They conform to a multitude of precedents elsewhere, many of which are cited in the briefs of counsel, to which may be added, *Thompson v. Faussat* (1815), Peters C. C., 182; *Bliss v. Railroad* (1894), 160 Mass. 447 (36 N. E. Rep. 65).

The case of *Blair v. Railroad* (1886), 89 Mo. 383, which is cited as having some tendency to the contrary, goes no further in that direction than to approve the practice of proceeding to first cancel the release for fraud upon allegations stating a cause of action in equity, before trying the other cause of action at law on the merits of the plaintiff's original claim. While that course may be adopted, it is not essential where the alleged fraud goes to the integrity of the release as a legal agreement, which is the case in the present action. The Blair decision does not declare it necessary to go into equity to get rid of a paper executed in such circumstances as here appear.

2. It is next contended that the release must stand because plaintiff did not, before action brought, offer to refund the amount paid by defendant for medical services to plaintiff under the terms of that paper.

The verdict gave defendant the benefit of that credit upon the plaintiff's claim, by reducing his damages to that extent ($62); but it is urged that that mode of refunding the fruits of the agreement for a release does not satisfy the requirements of law.

The substance of defendant's contention is that a tender of the benefits received under the release was essential to plaintiff's case; and that without it his action can not be maintained.

Assuming [as this court is now bound to do in view of the evidence and the findings of the jury] that

Girard v. St. Louis Car Wheel Co.

the release was not the valid act or contract of the plaintiff, then it was, at best, voidable at his option. That is to say, he was at liberty to ignore it in the assertion of his legal rights. His act in bringing the present suit was a plain and unmistakable repudiation of it, and a distinct notice that he discarded and denied the obligation which it apparently imposed. *Ward v. Day* (1863), 33 L. J. Q. B. 3; *Clough v. Railroad* (1871), L. R. 7 Exch. 26; *Dawes v. Harness* (1875), L. R. 10 C. P. 166.

He had done nothing to ratify it or adopt it as his act.

Was he required, in such a case, to seek the defendant's officers and tender back the value of the medical services rendered to him, before beginning his action?

He has, before judgment, accounted for everything of value received by him by virtue of the supposed release; and the defendant has had' credit therefor, as the verdict of the jury on its face shows.

But the attitude of the defendant, throughout, as well as before, the litigation, its plea of release, its setting aside in an envelope the wages of plaintiff each week, all indicate that any tender by plaintiff, of repayment for the medical services, would have been useless.

Since the execution of that paper, defendant has continuously asserted and relied upon its validity, and still asserts it.

It has been decisively held in other cases that no preliminary tender can be insisted upon, as a bar to legal action, where the facts show that the tender would have been rejected. *Deichmann v. Deichmann* (1871), 49 Mo. 107; *Westlake v. St. Louis* (1882), 77 Mo. 47.

In such a state of the facts a tender would be what Mr. Bigelow calls, an idle ceremony. Bigelow on Fraud (1888), p. 424.

No distinction should be made, and in my opinion none exists in principle, between actions for personal injuries and other actions at law in respect of the right now under consideration, or in respect of the amount of testimony required to sustain a judgment.

A preponderance of evidence is necessary to support an allegation of fraud in a court of law; and it is for the trial judge, in the first instance, to determine whether or not the testimony offered upon that allegation is reasonably sufficient to justify an inference of the fraud charged.

It has been often held in other jurisdictions, that a tender of money [received by virtue of a release of similar tenor to that in question here] need not be made before bringing suit, where the release was obtained by fraud; but that it is sufficient to offer its return, and to account for it by the judgment. *Duvall Mowry* (1860), 6 R. I. 479; *Smith v. Salomon* (1877), 7 Daly, 216; *Butler v. Railroad* (1891), 88 Ga. 594; *Kley v. Healy* (1891), 127 N. Y. 555; *Sheanon v. Ins. Co.* (1892), 83 Wis. 507; *Kirchner v. Sewing Machine Co.* (1892), 135 N. Y. 182; *Railroad v. Acuff* (1892) 92 Tenn. 26 (20 S. W. Rep. 348).

That certainly is the rule in equity in reference to rescission (*Martin v. Martin*, 1860, 35 Ala. 560; *Railroad v. Railroad*, 1884, 14 Abb. N. C. 224; *Lusted v. Railroad*, 1888, 71 Wis. 391), and in equity as a general rule, a better showing is required of a plaintiff, conditional to granting relief, than is exacted by the practice in courts of law.

It has, moreover, been ruled that where a release is found to have been obtained by fraud practiced upon one incapable, because of mental weakness, to validly enter into such a contract, no necessity exists for refunding the fruits of the release before action brought. *O'Brien v. Railroad* (1894, Iowa), 57 N. W.

Rep. 425; *Johnson v. Granite Co.* (1892) 53 Fed. Rep. 569.

Whether these rulings correctly declare the law applicable to releases of the kind now in question, we think it unnecessary to decide, in view of the condition of the record before the court.

3. If it be conceded for the sake of argument, that a tender was necessary to sustain plaintiff's right to recover upon his original cause of action, let us see whether the judgment actually reached in the trial court can be supported, upon the pleadings, evidence and findings of the jury, irrespective of the question of a tender.

No objection to the sufficiency of the plaintiff's case, for the want of such tender, was, at any time, interposed in the trial court, unless it may be implied in the request for an instruction that, under the pleadings and evidence, plaintiff was not entitled to recover

But, at that stage of the case, the testimony tend ing to prove fraud in obtaining from the plaintiff the execution of the release, had been admitted under the allegations of the reply.

Upon the facts before the court, at that time, plaintiff would have been entitled to recover at law, upon the footing of the fraud, a measure of damages at least as great as that which the judgment shows was actually meted out to him.

Plaintiff, at the outset of the proceeding, might have set up his original cause of action and the fraud by which he was induced to execute the release for it, and on showing these facts have lawfully claimed a recovery of the difference between what he received by reason of the release and the damages justly due him upon his former cause of action.

That theory would have involved acquiescence in the release which he might have given without waiving his right to recover for the fraud in obtaining it. His right of action for fraud, on such a showing, could be maintained without any offer to return the fruits of the release.

These positions are sustained by abundant precedents. 1 Wharton's Contracts, sec. 282; *Wabash, etc., Union v. James* (1893), 35 N. E. Rep. (Ind.) 919.

The only difference between a recovery on that basis and the judgment reached on the trial under review is one of form. The essential facts to sustain both appear in the plaintiff's pleadings and were found by the jury. Part of those facts are first stated in the reply; but the only objection made at any time to the reply in the circuit court was on the ground that it admitted the existence of a release, uncanceled when the action was brought. That objection we have held to be untenable for the reasons given in the first paragraph of this opinion.

No objection was made to any of plaintiff's pleadings on the ground that a tender of the fruits of the release was essential to plaintiff's right of recovery, nor was that proposition advanced in the trial court by defendant in any request for instructions.

By positive law in this state the trial courts are expressly authorized, where defendant has appeared and answered, as in this record, to "grant any relief consistent with the case made by the plaintiff and embraced within the issues." R. S. 1889, sec. 2216.

By the code of procedure this court is directed, in every stage of the action, to "disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party" (R. S. 1889, sec, 2100); and, further, not to "reverse the

judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action" (R. S. 1889, sec. 2303).

In addition to these very plain and practical rules of decision, the statute declares, furthermore, that it is the duty of the courts to so construe the provisions of the code of pleading and practice as "to distinguish between form and substance" (R. S. 1889, sec. 2117).

In this state of the record, and of the law, would it not be the sheerest technicality, a complete surrender of substance to barren form, to hold that the judgment should be reversed for want of a tender, when the facts alleged, proved and found, show a solid foundation for the result reached, irrespective of the question of a tender?

Viewing the case at bar broadly on its merits, the judgment of the trial court seems abundantly supported by the facts, and by the law applicable thereto.

The court would depart from the precepts contained in the statutes referred to, should it reverse the judgment for any of the objections which have been urged to it here. It should not be done. In my opinion the judgment ought to be affirmed. BLACK, C. J., and BRACE and MACFARLANE, JJ., concur in that result, and express their own views in an opinion filed along with this. Judges GANTT, SHERWOOD and BURGESS dissent, and file a separate opinion.


MACFARLANE, J. (concurring).—I agree to the conclusion reached by the court that the judgment should be affirmed, but desire briefly to give my reasons therefor.

The questions insisted upon in this court by defendant are: *First,* that an action could be not

maintained for damages until the release had been canceled by a decree in equity; and, *second*, that the release could not be attacked for fraud, either in law or equity, until plaintiff had restored to defendant whatever of considerations he had received thereunder.

An examination of this abstract of record fails to show that any objection was, at any time, by pleading or otherwise, made to the failure of plaintiff to return, or tender to defendant, the consideration paid under the release. On the other hand, the record does show that the defendant insisted upon the validity of the release throughout the trial, and gave it prominence as a defense. It may, therefore, be reasonably inferred that a tender would have been refused, and was waived. In addition, it affirmatively appears upon the record, that the amount paid out by defendant on account of the release was restored to it by a reduction of the judgment which was obtained by defendant. Manifestly, defendant was not prejudiced by a failure to make the tender.

We have often said that this court will only consider questions to which exceptions have been saved in the circuit court, or which affirmatively appear upon the record proper. We must, therefore, decline to consider the second proposition.

This leaves simply the question whether the reply properly put in issue the validity of the release; or, in other words, whether a release of the character of this one can be avoided, in an action at law, on the ground of fraud charged in the reply to the answer of defendant setting it up in bar of plaintiff's action. Defendant insists that it is a complete bar, until canceled by the decree of a court of equity.

It is undoubtedly true that fraud was one of the original heads of equity jurisdiction. "But," says Blackstone, "every kind of fraud is equally cognizable

\* \* \* in a court of law; and some frauds are cognizable only there, as fraud in obtaining a devise of lands." 3 Black. Com. 431. "Courts of equity and courts of law have a concurrent jurisdiction to suppress and relieve against fraud." Lord MANSFIELD in *Bright v. Eynon*, 1 Burr. \*396. This principle has received recognition and approval by this court. from the decision of *Montgomery v. Tipton*, 1 Mo. 446, to that of *Clough v. Holden*, 115 Mo. 336.

This doctrine is not disputed when the fraud is pleaded by way of answer to a cause of action stated in the petition, but, it is insisted, and argued with much learning and ability, that a different rule applies in case the charge of fraud is made to a release when pleaded as a bar to the action. In such case it is argued that the release must be canceled by the decree of a court of equity before the original action can be prosecuted. The principal ground of objection urged to the right to raise the question of fraud by reply is, that such a course of proceeding permits questions of fraud to be tried by a jury, instead of a chancellor, and the rescission of a release to be obtained upon evidence which would have been insufficient in a court of equity.

But this objection can be urged with equal plausibility, to pleading fraud by answer, which, it is conceded, may be done. When we keep in view the fact that courts of law have jurisdiction to relieve against fraud, it would seem to follow logically that its jurisdiction may be exercised to relieve against a fraudulent contract pleaded as a defense, as well as against a fraudulent contract which is made the subject-matter of the suit. It would seem wholly unnecessary, and oppressive to drive a plaintiff to another jurisdiction for relief against a defense, of which he may have had no information until the answer was made, when the forum,

having all the parties before it, has concurrent juris-
diction of the same subject-matter. This is particularly
true in jurisdictions wherein legal and equitable rights
are administered by one court and in one proceeding, as
in this state.

Chitty says: "To a plea of release, he (plaintiff)
may reply *non est factum*, or that it was obtained by
duress or fraud." 1 Chitty on Pleadings [16 Am. Ed.]
608. It is contended by counsel that Mr. Chitty had
reference alone to a release obtained pending the suit.
It is true, the references made are to cases in which pleas
*puis darrein continuance* were interposed, but the author's
general accuracy in the statement of his proposition
forbids my acceptance of any qualification to the broad
and general declarations. Bliss, in his work on Code
Pleading, lays down the same rule, section 201.

The rule given by Mr. Chitty has been generally,
if not uniformly followed by the courts of this country.
"The pleading of a release first occurs generally in the
answer or plea of the defendant, unless in actions
brought to set aside a release. And the controverting
of the release is usually made under the plaintiff's
reply." 20 Am. and Eng. Encyclopedia of Law, 766.

The following cases will be found to follow the
rule given by Chitty, *supra*, as applied to a release of
claims for damages on account of personal injuries
caused by negligence. *Railroad v. Lewis*, 109 Ill. 120;
*Bussian v. Railroad*, 56 Wis. 325; *Railroad v. Brazzil*,
78 Texas, 314; *Sobieski v. Railroad*, 41 Minn. 169;
*O'Brien v. Railroad*, 57 N. W. Rep. (Iowa), 425; *Mul-
len v. Railroad*, 127 Mass. 87; *Addystone, etc., Co., v.
Copple*, 22 S. W. Rep (Ky.) 323; *Dixon v. Railroad*, 100
N. Y. 170; *Bean v. Railroad*, 107 N. C. 731; *O'Neil v.
Railroad*, 63 Mich. 690; *Railroad v. Hayes*, 83 Ga. 558;
*Railroad v. Higgins*, 44 Ark. 296.

The pleading necessary to assert and attack such

release has not been directly considered or decided by this court. In *Vautrain v. Railroad* (8 Mo. App. 538) a release was pleaded in bar and the reply charged that it was obtained by fraud. No question of the propriety of thus attacking the release was raised or considered but the sufficiency of the pleading to put in issue the validity of the release was, inferentially, at least, conceded. This decision was approved by this court without comment. 78 Mo. 44.

In the case of *Blair v. Railroad*, 89 Mo. 383, the petition contained two counts, one in equity to set aside the release and the other for the damages received. This method of proceeding was approved by this court. There can be no doubt that a plaintiff can elect to have the release set aside by suit in equity before proceeding at law on the original cause of action. The *Blair case*, then, only settled the question that the two actions may be joined in separate counts in the same petition.

This court has recognized the right of a plaintiff to plead fraud in reply to a transaction set up by answer as a bar in the original cause of action. *Wright v. Mc-Pike*, 70 Mo. 177; *Williams v. Railroad*, 112 Mo. 463; *Jarrett v. Morton*, 44 Mo. 277.

Our conclusion is that the validity of the release was properly put in issue by the reply. BLACK, C. J., and BRACE, J., concur in this opinion.

BURGESS, J.—Finding myself unable to agree to some of the propositions asserted in the majority opinion of the court, I feel justified in giving my reasons and those of my associates, who agree with me, why I do not do so.

Mr. Chitty, in his work on pleadings, says that "to a plea of release, he (the plaintiff) may reply *non est factum*, or that it was obtained by * * * fraud." 1 Chitty on Pleadings [16 Am. Ed.], p. 608. He also

gives the form of reply of fraud, where the defendant has pleaded a release. 2 Chitty, 455. But from the general way in which the author thus states the law it is impossible to tell what kind of release he has reference to, whether all kinds or mere receipts or acquittances. If the latter, there is no question as to the correctness of the rule as a receipt may be contradicted at any time by verbal testimony.

In the case of *Wild v. Williams*, 6 Mees. & W. 490, the court refused to strike out a plea *puis darrein continuance* setting up a release, on affidavit showing release was obtained by fraud, holding that the plaintiff could contest the plea on that ground under a replication setting up the fraud. It is scarcely necessary to say that in that case, as the release had not been executed at the time of the commencment of this suit, that it could not then have been set aside, because not in existence.

In the case of *Webb v. Steele*, 13 N. H. 230, and *Hoitt v. Holcomb*, 23 N. H. 535, the rule as laid down by Mr. Chitty is adhered to. So it is also in the case of *Bussian v. Railroad*, 56 Wis. 325, and in *Dixon v. Railroad*, 100 N. Y. 170. In the case of *O'Donnell v. Clinton*, 145 Mass. 461, the plaintiff returned or offered to return the money received by him on the settlement before instituting his suit. So did the plaintiff in the case of *Peterson v. Railroad*, 38 Minn. 510.

The case of *Lusted v. Railroad*, 71 Wis. 391, was a case in which the plaintiff sustained personal injury, and whose stock was injured at the same time in a collision, and he was induced by fraud and fraudulent representation to settle and compromise the case for $50 when he executed a receipt in full of all damages to stock and for personal injuries, and it was held that it was unnecessary for him to offer to refund the money received by him before bringing his suit for the injuries

sustained to his person because no such thing was embraced in the settlement. The same rule was announced in the case of *Ryan v. Gross*, 12 Atl. Rep. 115. In the case of *Railroad v. Lewis*, 109 Ill. 120, the same rule is announced.

It was also held in that case that as the contract of settlement was obtained by fraud it was absolutely void and need not be rescinded in order to remove it out of the way to the assertion of a right. And, further, that, under such circumstances, the party might bring his action without first paying or tendering back the money that he had received on the settlement. The case of *Mullen v. Railroad*, 127 Mass. 86, is cited as an authority supporting the rule announced in that case. The facts in the case last cited were that the signature of the plaintiff was obtained to a paper purporting to be a settlement and discharge of the cause of action by fraudulent representations that it was merely a receipt for a gratuity, and the court in speaking with reference thereto says: "It is well established that, if a party enters into a contract and in consideration of so doing receives money or merchandise, and afterwards seeks to avoid the effect of such contract as having been fraudulently obtained, he must first give back to the other party the consideration received. *Coolidge v. Brigham*, 1 Metc. 547; *Eastabrook v. Swett*, 116 Mass. 303. And if, after accepting a certain sum in settlement of an unliquidated claim for damages under a contract, one seeks to pursue his remedy for the damages on the ground that the settlement was procured by fraud, or is not binding upon him, he must first repay the amount received. *Brown v. Hartford Ins. Co.*, 117 Mass. 479. "The principle on which these decisions rest is just; but it applies to those cases only where that which was received, and which must be returned, was the consideration of the contract or settlement

which the receiver intended to make, and understood that he was making, and which he seeks to avoid by reason of fraudulent practices of the other party which led him to agree to its terms. It does not apply to cases where a party holds out that he gives the consideration for one thing, and by fraud obtains an agreement that it was given for another thing.''

In the case at bar the plaintiff knew what the settlement and release embraced, but avers that it was obtained from him by fraud and fraudulent misrepresentations, and in this respect comes clearly within the rule announced in the case of *Mullen v. Railroad*, *supra*, which requires that the parties to the settlement be placed *in statu quo*, before the claimant can recover.

In the case of *Vautrain v. Railroad* (8 Mo. App. 538; s. c., 78 Mo. 44) the defense was that the settlement and receipts were obtained by fraud, and, although plaintiff had received $200 which was expressed in the receipt to be in full satisfaction of his demand against the road company, the court held that, as it was not shown that it was paid under an agreement of settlement of the damages that he was not bound to return it, clearly intimating that if it was so received, as a condition precedent to his recovery he must return it, though the opinion is not very distinct on the point. These authorities are all predicated on the theory announced in the case of *Railroad v. Lewis*, *supra*, that, when a settlement and release are obtained by fraud it is absolutely void as to all the parties thereto, and the party suing is not bound to refund the money received by him under such circumstances before bringing his suit or that the party from whom he received the money was indebted to him in a still larger sum, and that for that reason he had the right to retain the money thus received. The first proposition does not seem to be sustained by either reason or authority,

as contracts of settlement, although fraudulently obtained, are not absolutely void, but only voidable. *Railroad v. Hayes*, 83 Ga. 558; *Ins. Co. v. Howard*, 111 Ind. 544; *Gould v. Bank*, 86 N. Y. 75.

As to the second proposition, the rule can have no application in this case where all liability is denied. The court of appeals (46 Mo. App. 79), in its approval of the case of *Railroad v. Lewis, supra*, and cases which announce a similar doctrine, makes no distinction between cases where a liability is admitted and where all liability is denied, although such distinction really exists. Dissenting opinion of BIGGS, Judge, in this case, in the court of appeals; *Railroad v. Hayes, supra; Gould v. Bank, supra; Alexander v. Grand Avenue Railway Co.*, 54 Mo. App. 66.

Some of the authorities which announce a contrary rule, with respect to the failure of plaintiff to return to defendant company whatever he had received of value from it, by way of compromise, and for the release of his right of action, and to rescind the contract, will now be adverted to.

The case of *Gould v. Bank, supra*, was an action brought to recover damages for the alleged breach of an agreement made by the defendants to return to the plaintiffs therein certain United States bonds loaned by him to the bank. The defense was a return of the bonds and a compromise agreement, whereby the bank agreed to pay plaintiff, in satisfaction of his claim against it a certain sum of money which plaintiff accepted. To this answer plaintiff made reply that he was induced to enter into the compromise agreement by fraud of defendants. No offer to return the money was made. EARL, J., in delivering the opinion of the court, said:

"The compromise agreement, unless annulled, is an absolute bar to this action. It is a general rule laid

down in the text books and reported cases that a party who seeks to rescind a contract into which he has been induced to enter by fraud must restore to the other party whatever he has obtained by virtue of the contract. (*Cobb v. Hatfield*, 46 N. Y. 533). He can not retain anything he received under the contract and yet proceed in disaffirmance thereof."

It was further held in that case that, as it was an action at law upon the original claim, plaintiff must show that he rescinded the fraudulent compromise prior to the commencement of the action, and that, as no rescission was shown, a final determination by the court that plaintiff was entitled to more than the sum paid was no answer to the objection. It was also held that the rule is different where the compromise was of an undisputed claim. And that the offer to rescind might be made for the first time in the complant. That is a leading and one of the best considered cases anywhere reported.

"It is idle to say that the distinction between legal and equitable actions has been wiped out by the modern practice. It is true that all actions must be commenced in the same way; that in every form of action the facts constituting the cause of action or defense must be truly stated; that fictions in pleadings have been abolished, and that both kinds of actions are triable in the same courts. But the distinction between legal and equitable actions is as fundamental as that between actions *ex contractu* and *ex delicto*, and no legislative fiat can wipe it out. (*Reubens v. Joel*, 13 N. Y. 488; *Goulet v. Asseler*, 22 N. Y. 225.) At any rate, the difference between an action to rescind a contract and one brought not to rescind it, but based upon the theory that it has already been rescinded, is as broad as a gulf. They depend upon different principles and require different judgments." *Gould v. Bank, supra.*

The rule is laid down in *Evans v. Gale* (17 N. H. 573), as follows: "If one has been induced to make a contract to pay money or to deliver anything, by such means that he is entitled to rescind the transaction, he must, in order to do so, first restore to the other party whatever may have been received in exchange for the money or other thing he seeks to recover back, and to which he would become entitled as his own property immediately upon the rescission of the act, whose proper effect would have been to vest it in the other party." The reason of the rule, as stated by Chief Justice SHAW in *Thayer v. Turner* (8 Metc. 550), is that, "the plaintiff, so far as it is in his power, shall put the defendant *in statu quo*, by restoring and revesting his former property in him, without putting him to an action to recover it, before he can exercise his own right to take back the property sold, or bring an action for it." *Kimball v. Cunningham*, 4 Mass. 502. In the case of *Doane v. Lockwood*, 115 Ill. 490, it was held that when the vendor had received any valuable consideration or note of the purchaser upon a sale of goods, he can not rescind the contract for fraud without first returning or offering to return the consideration received, whatever it may be.

So when a party is induced to sell property, upon false and fraudulent representations as to amount of property and to take a note to secure the payment of the purchase price, he may rescind the contract by offering to return the note but he can not maintain replevin for the property sold until he does so. *Moriarty v. Stofferan*, 89 Ill. 528. If anything has been paid by the purchaser, although he obtained the property through fraud, before the vendor can recover it, he must restore whatever value he received to the purchaser.

VOL. 123—25

The parties should be put *in statu quo* as far as possible. *Stevens v. Hyde*, 32 Barb. 171; *McMichael v. Kilmer*, 76 N. Y. 36; *Graham v. Meyer*, 99 N. Y. 611; *Baird v. The Mayor, etc.*, 96 N. Y. 567; *Tisdale v. Buckmore*, 33 Me. 461; *Camplin v. Burton*, 2 J. J. Marsh. 216; *Gifford v. Carvill*, 29 Cal. 589; *Estis v. Reynolds*, 75 Mo. 563; *Bisbee v. Ham*, 47 Me. 543; 1 Bigelow on the Law of Fraud, pp. 73, 74.

When one has received anything of value on a settlement of a right of action and executed a release thereof, it follows inevitably that the contract of settlement, not being void, it constitutes an insuperable barrier against a recovery so long as it is not rescinded or avoided by an offer to return the consideration paid for it. It was in principle so held in *Insurance Co. v. Howard*, 111 Ind. 544. It was there decided that it did not "alter the case that the compromise may have been brought about by the fraud and misrepresentation of the defendant. Or that in the end it was found that a sum largely in excess of the amount paid to settle the disputed liability was due the plaintiff." See, also, *Brown v. Ins. Co.*, 117 Mass. 479.

In *Lee v. Railroad*, L. R. 6 Ch. App., 527, the plaintiff was injured by a railway accident, and sent in a claim for £691. The defendant paid him £400, and took a receipt acknowledging that sum to be in full discharge of his claim. He afterward sued the company to recover further compensation, and it pleaded that the plaintiff had accepted the £400 in full satisfaction and discharge of the right of action. Plaintiff then filed his bill to restrain the company from relying on the plea, and, while he was defeated upon another ground, Lord Justice JAMES expressed the opinion that he could get no relief in that court, on the gound of mistake in giving the discharge, "except on the terms of giving back the £400, and being put in exactly

the same position he was in when the transaction was accepted.''

In the case of *Railroad v. Hayes*, 83 Ga. 558, the plaintiff was injured by a railway accident. The defendant pleaded a settlement of the claim, and the payment of $100 to plaintiff in satisfaction thereof. Issue was taken on this plea, and it was held by the court that plaintiff could not successfully reply by showing that the agreement of release was obtained by defendant's fraud, without also showing that, before commencing his suit, he had tendered to the defendant the sum received with demand of return of what defendant had received from him, thus rescinding the settlement. 1 Bigelow on Fraud, 7374; 2 Beach on Modern Equity Jurisprudence, sec. 552; dissenting opinion of BIGGS, J., St. Louis court of appeals, in this case; *Alexander v. Railroad*, 54 Mo. App. 70.

The same rule has been announced by the St. Louis court of appeals in the case of *Cahn v. Reid*, 18 Mo. App. 115, and by this court in the cases of *Jarrett v. Morton*, 44 Mo. 275; *Hart v. Handlin*, 43 Mo. 171, and in *Estes v. Reynolds*, 75 Mo. 563.

The rule is, in actions of trover or replevin to recover property parted with, and all actions based solely upon the original relations between the parties, the plaintiff must show that he rescinded the fraudulent contract before the commencement of the action, by returning, or offering to return, to the party from whom it was received, whatever of value was received for the release; in other words, that he had a cause of action when he commenced his action. *Gould v. Bank*, 86 N. Y. 75, and authorities cited. It is also held that, in case where a vendor upon a sale induced by fraud has taken the vendee's note, he may repudiate the contract and bring his suit to recover the property sold without first surrendering the note. *Thurston v.*

*Blanchard*, 22 Pick. 18; *Nichols v. Michael*, 23 N. Y. 264. The reason is, as between the parties the note is not property, but a mere promise to pay, which is avoided by the rescission of the contract. It is of no value to the vendee, and needs to be surrendered to him at the trial, merely because it might otherwise be used to his detriment. *Gould v. Bank, supra.*

It will thus be seen that the authorities are almost unanimous in holding that where money or any other valuable thing is paid on a settlement to obtain a release of any right of action, before the person to whom it is paid and who has the right of action can recover on it, he must return, or offer to return, whatever he has received, if of any value, and this he must do, although the settlement or release was obtained by fraud. And it is also manifest from the decided weight of authority, that the offer to return whatever of value has been received as a consideration for the settlement or release, must be made before or at the time the suit is brought, and the contract or agreement, in so far as it lies in the power of the party desiring to do so, rescinded.

The question has never been directly passed upon by the appellate courts of this state in a case where the action was for personal injuries, except in two cases, the case at bar, in which the St. Louis court of appeals, by a majority opinion, held that, as the plaintiff had been induced by fraud or undue influence, to release his right of action, he might sue upon such right of action without first obtaining the annulment of the release by suit in equity; and as such release was pleaded as a defense to the action, he might in his reply set up the fraud or undue influence in avoidance of it. BIGGS, J., dissented from this decision.

In the case of *Alexander v. Railroad*, the ruling was directly to the contrary and in that case it was

held, that where fraud is alleged to have been practiced upon a party in the compromise settlement of a claim for damages at which a money consideration passed, a return or offer to return the latter is a prerequisite to the right to annul the contract settlement, and to sue upon the original cause. While it is true that in the case of *Mateer v. Railroad*, 105 Mo. 351, the answer pleaded a settlement of plaintiff's right of action, and the payment of a moneyed consideration for the release, the question now under consideration, was not passed upon or adverted to, so that case can not be considered as an authority on this question.

In this state the question as to whether the plaintiff, before suing, or at the time thereof, under the circumstances disclosed by the evidence, must have placed the defendant *in statu quo* by returning, or offering to return, to it everything of value received by him in consideration for the release, is an open one, the nearest approach to an adjudication upon that question by this court being the case of *Blair v. Railroad*, 89 Mo. 383, wherein it was held that the plaintiff, who, as she alleged in her petition, had by fraud been induced to compromise a right of action she had against the defendant therein for damages, might include in the same petition, two counts, one to set aside the settlement for fraud, offering to return the money received by her on the settlement, and the other an action on the case for damages.

That this is the proper practice seems clear. A proceeding to set aside a settlement or release obtained by fraud should be by a proceeding in equity and should be tried by the court. Moreover in a case like this the evidence should be clear and satisfactory, "such as will preponderate over presumption or evidence on the other side." It must be clearly and distinctly proved. 1 Biglow on the Law of Frauds, p. 123. By

proceeding in this way the burden of proof rests on the plaintiff to establish the fraud, while in an action at law when fraud is set up as a defense in obtaining the release the case is triable before a jury and a preponderance of evidence is only required in order to set aside the settlement. Not only this, but when the proceeding is in the first place to set aside the settlement and release an opportunity is offered for a fair trial of the questions relating to the *bona fides* of the settlement and release, disconnected from the hearing of any facts relating to the main facts at issue in the case. This is but fair and equitable.

The plaintiff should have embraced in his petition, in connection with the count for damages, a separate count to set aside the settlement and release, and with an offer to refund to defendant everything of value received from it in consideration of such settlement and release, as was done in the case of *Blair v. Railroad, supra.*

The question of tender was argued both orally and in elaborate briefs, both in division and in banc, and no suggestion was made that the question was not properly for decision and it was only discovered since the first submission that it was not saved in the circuit court. For this reason we considered it in division two, and as this opinion expresses our views, we will not rewrite the opinion filed in division two, but we hold that the release can only be set aside in a court of equity and therefore dissent from the view taken by a majority of the court on that question.

GANTT, P. J., and SHERWOOD, J., concur in this opinion.