JOHN DWYER, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 21, 1896.

1. **Release:** FORUM FOR CANCELLATION: NECESSITY OF RETURN OR TENDER OF CONSIDERATION. Resort to equity for the cancellation of a release of claims for damages is not necessary, when the execution of it was obtained by fraud or deception, or the party who executed it was legally incapable of contracting. And in such cases the party executing the release may contest its validity in an action at law without returning or tendering the consideration received by him for it.

2. ———: ———: ———. But when the party executing the release was induced to enter into it through fraud or undue influence, or was temporarily insane at the time of its execution, that is, did not possess sufficient mind to comprehend the nature and effect of the transaction, and seeks on either of these grounds to avoid the release, recourse must be had to equity for its cancellation; and for such a proceeding a return or tender of the consideration is essential.

*Appeal from the St. Charles Circuit Court.*—Hon. E. M. Hughes, Judge.

Reversed and remanded.

*F. W. Lehmann* and *Geo. S. Grover* for appellant.

*John A. Talty* for respondent.

Biggs, J.—On the night of the seventh of October, 1893, while plaintiff was crossing the defendant's railroad track at a public highway, the wagon in which he was riding was struck by an engine and he was thrown to the ground, receiving a severe cut on his head and other injuries on his chest and back. He sues in this action for damages on account of such injuries, and alleges as acts of negligence that the defendant's servants in charge of the engine failed to sound the whistle or to ring the bell in approaching the crossing. The answer is a general denial, and in bar of the action a release of the alleged cause of action was set forth. In the reply the plaintiff denied the execution of the release, but alleged that, if he did in fact execute the paper, he was not of contracting mind, and that the defendant's agents took advantage of his weak mental condition in procuring his signature.

The trial resulted in a verdict and judgment in favor of the plaintiff for $400, from which the defendant has appealed.

The defendant made the point in the circuit court (which it renews here), that the plaintiff's reply presents issues which can not be tried in an action at law. This assignment presents a question which has troubled the appellate courts of the state, and concerning which the judges have been unable to fully agree.

The question arose in this court in the case of

*Girard v. St. Louis Car Wheel Company*, 46 Mo. App. 79. The reply in that case was similar to the one we have here. We were unable to agree, and the case was certified to the supreme court. That court decided by a majority opinion that, where the execution of the instrument is denied, or where it is averred that at the time the plaintiff signed the release he was not of contracting mind, or that fraud or deception was practiced in the *execution* of the instrument or in its procurement, such issues are properly presented by a reply, and that resort need not be made to a court of equity in the first instance to set aside the release. *Girard v. St. Louis Car Wheel Company*, 123 Mo. 358.

The supreme court again dealt with the question in the case of *Och v. Missouri, etc., Railway Company*, reported in the 31 S. W. Reporter, 962. We understand the majority opinion in that case to hold that, where the execution of the release is denied, or it is claimed that its *execution* was obtained by fraud or deception, or that the plaintiff was legally incapable of contracting, resort need not be made to a court of equity to set aside the release, but that, where the claim is that the plaintiff was induced to enter into the contract through fraud or undue influence, or that at the time he was temporarily insane, that is, not of sufficient mind to comprehend the nature and effect of the transaction, then the release must be first set aside in a court of equity. The distinction is that, in the circumstances first named, the case is presented and tried on the theory that there is no contract, while in the other the contract is admitted but the plaintiff avers that he ought not to be bound by it.

Under the foregoing decisions, as we read and understand them, the issues raised by the reply in this case, namely, whether the plaintiff executed the release, or, if he did, whether its execution was obtained by

fraud, were properly triable; but the further averments that the plaintiff was induced to sign the release by reason of the fraudulent representations of the defendant's agents, or that the latter took advantage of the weak and enfeebled condition of plaintiff's mind and induced him to sign it, or that the plaintiff was temporarily not of contracting mind, ought not to have been inquired into.

The point is also made by defendant's counsel that, as a condition precedent to plaintiff's right to sue at law, he should have returned or offered to return the money which he admits he received from the defendant. This question was also raised in the *Girard* case, but Judge MACFARLANE, in whose opinion a majority of the court seem to have concurred, declined to pass on it, for the reason that it was not presented by the record. Concerning this question we gather from the discussion in the *Och* case that, where the plaintiff denies the execution of the release or alleges fraud or deception in its *execution*, or where the plaintiff was legally incapable of contracting, the plaintiff need not return the money, but that, in other cases, where resort must be had to a court of equity to cancel the release, the money must be returned or tendered back when the suit is commenced. Hence we must hold that, under the issues which are in part presented by the reply in the present case, the plaintiff was not required to return or offer to return the money.

· Did the plaintiff execute the release; or, if so, was his signature obtained by fraud or deception, were the only issues made by the reply, which were properly triable. As there was no evidence to support either, the circuit court committed error in overruling the defendant's demurrer to the evidence. The facts and circumstances attending the execution of the instrument may be summarized as follows: The plaintiff

received his injuries on the night of the seventh of October, and the release was executed on the thirteenth of the same month. During the interval the plaintiff was confined to his bed on account of his injuries, and was under the care of a physician. The defendant's claim agent visited him on the morning of the thirteenth. The release was then obtained, the agent delivering a check to the plaintiff for the amount of the settlement. The plaintiff testified that on that day he was, and had been for several days, suffering intense pain, and had slept but little for several nights. He disclaimed any recollection of signing the release or that it was ever talked of in his presence, or that he saw the defendant's agent on the thirteenth day of October, or at any other time prior to the trial of the cause. William Meiser, one of the witnesses to the agreement, testified that at the time the settlement was made the plaintiff seemed to be rather stupid and was suffering a good deal, and the witness gave it as his opinion that he was incapable of understanding the settlement that was made. Outside of the testimony of this witness all of the evidence, both positive and circumstantial, tended to prove that the plaintiff was perfectly rational at the time the settlement was made, and that he manifested in every way a perfect understanding and appreciation of his own interest. The testimony of his attending physician and that of the claim agent was to the effect, that, in answer to a proposition of settlement by the agent, the plaintiff said that he thought he ought to have $400 or $500. They talked the matter over for some time, and, having failed to agree, the physician suggested that the agent leave the room, so that he and the plaintiff and his wife and the witness Meiser could talk the matter over privately. Acting on this suggestion, the agent left the room. The matter was talked over as suggested,

and, after considerable discussion, the physician advised a settlement for $75 and the plaintiff's medical bill, for the reason that the plaintiff's injuries were not of a serious character, that he would be able to go to business in a few days, and that, if he went to law, he would in all probability do no better, as he would have to give his lawyer one half of whatever amount he might recover. The agent was then called back into the room, and the proposition which had been agreed on was made to him. Being informed that the bill of the physician would not exceed $25, the agent accepted the proposition. The release was then written, and, when the plaintiff was asked to sign it, he replied that he was too nervous and that his wife should sign it for him. This she did, the defendant making his mark. Meiser, the physician, and the agent signed the paper as witnesses. When the agent was about to write the check, he asked whether he should write one check in favor of plaintiff for $75, and one in favor of the physician for $25. The plaintiff then asked the physician what his bill was up to that time, and he answered that it was $18. Thereupon the plaintiff requested that a check for the whole amount be drawn in his favor, and he instructed his wife to pay the doctor out of money which he had in the house, which she did. In reference to these facts Meiser substantially corroborates the testimony of the physician and agent. In addition, it is undisputed that the plaintiff went to the city of St. Charles on the sixteenth of October, which was the third day after the settlement was made, and there deposited the check in a bank for collection; that the check was paid by the defendant on the eighteenth, and on the twentieth the plaintiff received the money from the bank. The cashier testified that he was well acquainted with plaintiff; that he was in the habit of doing business with him, and that on both occasions

mentioned he seemed to be perfectly rational. It was also developed at the trial that the plaintiff is a man of some education, that he is engaged in farming, but that his chief business is buying and selling live stock.

The foregoing is believed to be a fair statement of the facts, which leaves no room to doubt that the plaintiff actually executed the release by making his mark. Neither is there the least thing tending to show that the defendant practiced any fraud, trick, or deception, in procuring his signature. At the suggestion of the plaintiff his physician made a proposition of settlement; it was accepted by the defendant's agent; the release was prepared according to the proposed terms; and the plaintiff signed it.

If the plaintiff was induced to sign the release through the false representations of the defendant's agent, or by reason of any undue influence exercised by him, or if at the time the plaintiff was temporarily not of contracting mind, he must first have the release set aside, and, until this is done, it stands as a legal bar to the further prosecution of the action. We will, therefore, reverse the judgment and remand the cause, in order to give plaintiff an opportunity, if so advised, to amend his petition by adding a count in equity. Judge ROMBAUER concurs in this opinion as written, Judge BOND in the result only; and they are of the further opinion that the circuit court erred in refusing to grant a new trial on account of newly discovered evidence, in which I do not concur.